UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| ROCKWOOD SELECT ASSET FUND XI, (6)-1, LLC,<br>    Plaintiff<br><br>        v.<br><br>DEVINE, MILLIMET & BRANCH, PA and KAREN S. McGINLEY, ESQ.,<br>    Defendants | Docket No. _____ |

COMPLAINT AND JURY DEMAND

Nature of Action

1. This is an action against an attorney and her law firm for misrepresentations in connection with a $1.625 million commercial loan from Plaintiff to its client. Defendants made the misrepresentations in order to obtain a significant financial benefit for themselves; namely, payment of a long-outstanding legal bill of $107,000 from the loan proceeds. The client provided false financial statements to Plaintiff which did not reflect that liability, nor did Defendants disclose it.

2. Defendants falsely stated in a formal, written legal opinion that there was no pending litigation against their client as of the closing date. They also gave a false oral assurance, in response to Plaintiff's specific inquiry, that the commercial tenant whose rent was to be used to repay the loan was a legitimate third party. Plaintiff reasonably relied on

- 2 -

Defendants' misrepresentations in disbursing $1.3 million in loan proceeds to Defendants' client in July 2011.

3. Defendants' client, Martha McAdam and various entities she owned or controlled ("McAdam Borrowers"), defaulted on the very first payment. To date, Plaintiff has succeeded in collecting only about $377,000. Efforts to work out the loan or realize on the collateral have proven futile. Plaintiff seeks damages in the amount of the loan funds disbursed and not repaid; the attorney's fees and expenses incurred to collect on the loan; and the loss of use of the funds.

## Jurisdiction and Venue

4. Subject matter jurisdiction is available under 28 U.S.C. § 1332(a)(1), since the amount in controversy exceeds $75,000 and the parties are residents of different states. Venue is proper in the District of New Hampshire under 28 U.S.C. § 1391(b)(1), since both Defendants are residents there.

5. Plaintiff Rockwood Select Asset Fund XI (6)-1, LLC ("Rockwood") is a Utah limited liability company, located in Murray, Utah.

6. Defendant Devine, Millimet & Branch, PA ("Devine Millimet") is a New Hampshire law firm.

7. Defendant Karen S. McGinley, Esq. is a shareholder of Devine Millimet who works in its Manchester office. According to the law firm's website, she is chair of the real estate department. Martha McAdam has been Ms. McGinley's client for more than a decade.

## Factual Allegations

8. In 2011, Rockwood was approached by Martha McAdam on behalf of the McAdam Borrowers to obtain a commercial loan in excess of $1 million. Rockwood ultimately agreed to provide a loan in the face amount of $1,625,000 (the "Rockwood Loan" or the "Loan").

9. The McAdam Borrowers offered to collateralize the Loan by granting Rockwood a security interest in a large commercial building located at 141-143 Burke Street in Nashua, New Hampshire ("the Burke Street Building").

10. McAdam retained Defendants McGinley and Devine Millimet to represent her and the McAdam Borrowers in the Rockwood Loan transaction. Unbeknownst to Plaintiff, McAdam owed Defendants a legal bill of $107,000, which had been outstanding for several years and had steadily increased.

11. Defendant McGinley had been under pressure from Devine Millimet to collect the bill, and she in turn had pressured McAdam. McAdam had promised to pay the bill from the Rockwood Loan proceeds if and when it closed.

12. McAdam provided false personal financial statements to Plaintiff in connection with the Loan which did not reflect her liability to Defendants, or other liabilities. Defendants also did not disclose the liability or the fact that they had a financial interest in the Loan proceeds.

13. As a condition precedent to providing the Loan, Rockwood required a formal, written legal opinion from Devine Millimet stating, among other things, that no legal action was pending or threatened against McAdam or the McAdam Borrowers.

14. In order to induce Rockwood to provide the Loan, Devine Millimet issued a formal written legal opinion to Rockwood on July 21, 2011 stating: "To our knowledge, there is no action, suit, proceeding or governmental investigation pending or threatened in writing against the Borrowers."

15. As an additional condition precedent to providing the Loan, Rockwood asked Defendants for an assurance that one of the two major tenants at the Burke Street Building, Hillsborough Industrial Maintenance Partners, Inc., a/k/a "Monster Storage"' ("Monster Storage"), was not a bogus tenant but was in fact a legitimate and operating company, independent from McAdam and the McAdam Borrowers. Monster Storage occupied almost half the Burke Street Building.

16. In order to induce Rockwood to make the Loan, Defendant McGinley assured Rockwood representative Todd Enright at a meeting on July 18, 2011, that Monster Storage was indeed a legitimate operating company which was independent of McAdam and the McAdam Borrowers.

17. Attorney McGinley explained to Mr. Enright that she was intimately familiar with the affairs of McAdam and the McAdam Borrowers because she had represented them for many years. Further, she said she knew Monster Storage was independent, because she had personally negotiated and drafted the lease on behalf of McAdam.

18. Rockwood reasonably relied on Defendants' representations in its formal opinion letter and Defendant McGinley's assurance regarding the legitimacy of Monster Storage in going forward with the Loan and disbursing $1.3 million to McAdam and the McAdam Borrowers. Rockwood would not have made the Loan if it had known that any of the representations or assurances were false.

19. After obtaining $1.3 million from Rockwood, the McAdam Borrowers defaulted on their first payment in November 2013. To date, the McAdam Borrowers have repaid only $350,000 of principal. They have also have paid an additional $27,700 for expenses and late fees.

20. There is no prospect of further recovery from McAdam or the McAdam Borrowers. Efforts to work out the loan or realize on the collateral have proven futile. A senior lender has foreclosed on the collateral.

21. Following the default, Rockwood discovered that, contrary to Defendants' formal opinion letter, there had in fact been litigation pending against McAdam at the time the Loan was closed. An Ohio attorney named Jack Donenfeld ("Donenfeld") had brought suit and obtained a Judgment against McAdam in Ohio for $133,700 for unpaid legal bills.

22. In awarding punitive as well as compensatory damages, the Ohio trial court "determined that McAdam had committed fraud on the law firm and on the court to avoid liability by altering two documents and presenting false facts in two affidavits." The court concluded that McAdam's "intentional alteration and falsification of correspondence, as well as her presentation of false statements in her affidavits, amounted to actual malice supporting an award of punitive damages." Both the compensatory and punitive awards were affirmed on appeal.

23. Rockwood would not have made the Loan to McAdam or the McAdam Borrowers had it been aware that McAdam had a $133,700 Judgment outstanding against her. Rockwood also would not have made the loan to McAdam or the McAdam Borrowers if it knew that McAdam had committed fraud or presented altered documents and false affidavits to a court.

24. After McAdam refused to pay the Ohio award, Donenfeld filed an action to collect on the Judgment in New Hampshire, which was pending at the time Devine Millimet issued the opinion letter to Rockwood.

25. On information and belief, Defendants were aware of both the New Hampshire collection action and the original Ohio action at the time Devine Millimet issued the formal opinion letter for the Rockwood Loan. Devine Millimet had billed McAdam for legal work in the Ohio action, and Defendant McGinley had called Donenfeld's lawyer to request a continuance in the New Hampshire action.

26. Following the default, Rockwood also discovered that, contrary to Defendant McGinley's assurances, Monster Storage was not a legitimate, operating company which was independent of McAdam and the McAdam Borrowers. Rather, Monster Storage had been started by McAdam herself, and it was controlled by her and her brother.

27. Contrary to Defendant McGinley's representations, there had been no negotiation between McGinley and Monster Storage. Moreover, McAdam herself had drafted the lease, not Defendant McGinley. McAdam had an accomplice execute the bogus lease.

28. Monster Storage was part of a fraud designed to make it appear that the Burke Street Building had two legitimate, rent-paying tenants. The fraud enabled McAdam to obtain a larger first mortgage on the Burke Street Building, and it induced Rockwood to make the Loan to the McAdam Borrowers.

29. Following the default, Rockwood learned that Monster Storage did not pay the rent shown in the documents presented to Rockwood to induce its Loan. There was no profit from rental income at the Burke Street Building, as stated in such documents. Rather, McAdam

used the rental payment from the only other tenant at the Burke Street Building to cover the mortgage and other expenses, leaving nothing to repay the Rockwood Loan.

30. Following the default, Plaintiff discovered that Defendants had had a pecuniary interest in the proceeds of the Loan. Unbeknownst to Rockwood, Defendants were owed more than $107,000 by McAdam and the McAdam Borrowers. McAdam was either unable or unwilling to pay the bill from her own funds, but she had promised to pay it from the proceeds of the Rockwood Loan. The outstanding bill was indeed paid to Devine Millimet shortly after the Loan closed.

31. After the McAdam Borrowers defaulted, Defendants continued to give Plaintiff false factual assurances. For example, Defendant McGinley sent e-mails assuring Plaintiff that money had been wired or was soon to be wired to its account from the McAdam Borrowers, when in fact nothing of the sort occurred. Defendant McGinley presented bank statements and other written confirmations supporting her assertion that funds were available to be wired, when in fact these bank statements were forged. Defendant McGinley even presented her own affidavit to a New Hampshire Superior Court attesting that she was in possession of a lease executed by a new tenant of the Burke Street Building, when in fact the tenant did not exist.

32. As a result of Devine Millimet's misrepresentations, Rockwood has been damaged in an amount exceeding $1 million.

<u>Legal Claims</u>

33. In light of the facts and circumstances, Defendants owed a duty to disclose to Rockwood, in a non-misleading manner, the facts known to them concerning the litigation against Martha McAdam and entities owned or controlled by her, or to conduct a reasonable, good faith inquiry to confirm that no litigation was in fact pending at the time of the Loan.

34. Defendants owed a duty to disclose to Rockwood, in a non-misleading manner, the facts known to them as to whether Monster Storage was a legitimate and operating business which was independent of Martha McAdam and entities owned or controlled by her at the time of the Loan.

35. Each Defendant breached one or more of their legal duties to Rockwood in stating that there was no pending litigation against McAdam as of July 21, 2011, the date the Devine Millimet formal opinion was issued.

36. Defendant McGinley breached one or more of her legal duties to Rockwood in representing to it that Monster Storage was a legitimate and operating company which was independent of Martha McAdam and entities owned or controlled by her.

37. Because Defendant McGinley's misrepresentation to Rockwood concerning Monster Storage was made in the course of her legal work at Devine Millimet, and as an employee of the firm, Devine Millimet is vicariously liable for the damage suffered by Rockwood as a result.

38. As a proximate result of the misrepresentations made by Defendants to Rockwood, it disbursed $1.3 million to the McAdam Borrowers on July 21, 2011. But for such misrepresentations, Rockwood would not have agreed to the Loan or disbursed the funds.

39. The McAdam Borrowers are in default on the Loan and, despite Plaintiff's diligent efforts, there is no realistic chance of further collection from them.

## Damages

The damages proximately caused by Defendants' actions include at least the following:

    a. $950,000 in Loan principal disbursed to the McAdam Borrowers and never repaid;

- 9 -

    b.      Attorney's fees and expenses paid by Plaintiff in an effort to work out the Loan or realize on the collateral; and

    c.      Loss of the use of the funds by Plaintiff.

## **JURY DEMAND**

**Plaintiff requests a trial by jury on all issues so triable.**

Dated:        Concord, New Hampshire
                  July 8, 2014

                                       /s/Finis E. Williams, III
                                       Finis E. Williams III, Esq.
                                       15 No. Main Street, Suite 206
                                       Concord, NH  03301
                                       finiswilliams@hotmail.com
                                       (603) 226-1919
                                       For Plaintiff

*Of Counsel:*

Norman Williams, Esq.
Robert F. O'Neill, Esq.
Gravel & Shea PC
76 St. Paul Street, 7th Floor, P. O. Box 369
Burlington, VT  05402-0369
 (802) 658-0220
nwilliams@gravelshea.com
roneill@gravelshea.com