UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Rockwood Select Asset Fund
XI, (6)-1, LLC

     v.                              Civil No. 14-cv-303-JL
                                     Opinion No. 2015 DNH 135P

Devine, Millimet & Branch, PA,
and Karen S. McGinley, Esq.

**MEMORANDUM ORDER**

This case, based on fraud in the inducement, implicates the contours of the crime-fraud exception to the attorney client privilege.  Plaintiff Rockwood Select Asset Fund XI, (6)-1, LLC has sued Karen McGinley, an attorney, and her law firm, Devine, Millimet & Branch, PA,[1] alleging that Attorney McGinley made false representations about the financial well-being of her client, Martha McAdam, to Rockwood in order to help McAdam obtain a loan from Rockwood.  Specifically, Rockwood alleges that (1) Attorney McGinley told Rockwood that no litigation was pending against McAdam as of the date the loan agreement was to be signed when, in fact, Devine was aware of and represented McAdam in pending litigation at that time; and (2) Attorney McGinley informed Rockwood that one of McAdam's tenants in the collateral property, Monster Storage, was independent of McAdam when, in

---

[1]Except where necessary to distinguish the actions of the individual from the firm, the court refers to the defendants collectively as Devine.

fact, it was not.  The court has subject-matter jurisdiction under 28 U.S.C. 1332(a)(1) (diversity).

Rockwood now moves to compel Devine to produce documents prepared by Devine in connection with litigation and communications between Devine and McAdam relating to four topics: (1) an action filed against McAdam in Hamilton County, Ohio, for breach of contract (the "Ohio Action"); (2) an action filed in New Hampshire by the prevailing Ohio plaintiff to collect the judgment entered against McAdam (the "New Hampshire Collection Action"); (3) the Rockwood loan itself; and (4) a lease entered into between McAdam and Monster Storage.  Devine has withheld these documents as protected by the attorney-client privilege and/or the work product doctrine.[2]  Rockwood contends that the crime-fraud exception withdraws that protection from these documents and requests that the court review them in camera to determine whether the crime-fraud exception applies.

After considering the parties' arguments and the evidence submitted in support thereof, the court grants the motion in part and denies it in part.  The court will review, in camera,

---

[2]The volume of documents sought is unclear from the parties' submissions.  Devine has recorded on a privilege log some 227 documents as withheld on the basis of attorney-client privilege or the work product doctrine, but represents that it has produced at least some of these documents to the plaintiff.  The number at issue, then, is something less than 227.

documents relating to the Ohio Action, the New Hampshire
Collection Action, and the Rockwood loan, including those created
after July 21, 2011.  Rockwood has adduced evidence sufficient
for a reasonable person to conclude that those documents may
reveal evidence that the crime-fraud exception applies.  Because
Rockwood has not carried its burden with respect to the Monster
Storage lease documents, Rockwood's request for <u>in</u> <u>camera</u> review
of those documents is denied.

**I.   <u>Background</u>**

The facts, gleaned from the complaint and the parties'
moving papers, are as follows.  In 2011, Martha McAdam sought a
loan from Rockwood in the amount of $1.65 million dollars.  As
collateral for the loan, she offered an office building located
in Nashua, New Hampshire.  She retained defendant Attorney
McGinley, a partner in Devine's real estate practice group, to
represent her in the negotiation of the loan.

In the days leading up to execution of the loan agreement,
Rockwood sought and received certain assurances from McAdam
directly and through defendants, her counsel.  Most relevant to
Rockwood's claims here, Devine issued a written legal opinion
stating that it was not aware of any "action, suit, proceeding or
governmental investigation" against McAdam that was "pending or
threatened in writing" as of the date of the letter--July 21,

2011.  Purjes Affidavit (document no. 22-1), Exhibit H.  Devine also assured Rockwood that Monster Storage, one of McAdam's tenants, was independent of McAdam and would thus provide an independent source of revenue from which McAdam could repay the loan.  The parties finalized the loan agreement shortly thereafter, and McAdam soon defaulted on her repayments.

After McAdam defaulted, Rockwood alleges, certain uncomfortable facts came to its attention.  First, Rockwood learned that, contrary to Devine's representation, litigation had been pending against McAdam on July 21, 2011.  Specifically, Rockwood learned that an attorney in Ohio, Jack Donenfeld, won a judgment against McAdam in 2007 on a claim for breach of contract when McAdam failed to pay legal fees owed to him.  During the course of that action, the Ohio court found that McAdam had falsified documents and made false statements in an affidavit in support of her opposition to a motion for summary judgment. Donenfeld then sued McAdam in New Hampshire to collect on the Ohio judgment.  Devine admits that the New Hampshire Collection Action was pending when Devine assured Rockwood that it was not aware of any suit against McAdam.

Second, Rockwood alleges that it learned that Monster Storage was a pass-through entity owned and controlled by McAdam and her brother--and therefore not the anticipated independent

4

source of revenue for the loan's repayment.  Rockwood claims
that, had it known these two facts prior to July 21, 2011, it
would not have agreed to make the loan.

According to Rockwood, the story does not end there.  McAdam
continued to engage in fraudulent activity after the loan was
disbursed, it claims, and continued to employ Devine to further
that activity.  A condition of the loan required McAdam to use
the proceeds primarily for operations of and improvements to the
collateral property.  When Rockwood requested proof that McAdam
was using the proceeds accordingly, McAdam submitted to Rockwood
a set of invoices, bank wire confirmations, and bank statements.
Rockwood contends that McAdam fraudulently altered these
documents to overstate the amount spent on the improvements by
several hundred thousand dollars, that the wire confirmations
were falsified, and that the bank statements referenced a non-
existent account.  And, Rockwood contends, McAdam did not act
alone.  For example, Attorney McGinley assured Rockwood that
McAdam used the loan proceeds to install 60,000 feet of carpet,
though neither McAdam nor Devine substantiated that expenditure.

In early 2012, after McAdam missed several payments,
Rockwood pursued its default remedies, including taking ownership
and management of the collateral property.  McAdam sought a

temporary restraining order in Vermont[3] and, two months later, in New Hampshire to prevent Rockwood from doing so.  In New Hampshire, Rockwood counterclaimed for, _inter alia_, fraud, breach of contract, and negligent misrepresentation and ultimately won a default judgment against McAdam.  In the course of the New Hampshire default litigation, Attorney McGinley filed an affidavit with the Hillsborough County Superior Court stating that she was "in possession of a new lease" for the space being vacated by McAdam's principal tenant when no such lease had ever been finalized and the entity identified in the draft lease ultimately produced was unaware that even a draft existed. McAdam herself later testified that she was uncertain whether a lease had ever been signed.

## II.  **Applicable legal standard**

Of crucial importance here is that the court is not called upon to resolve the privilege exception issues on this record. At this stage, the court need only determine whether it will conduct an _in camera_ review of the documents in question.  The required showing in that regard is not particularly burdensome. As explained below, the quantum of proof required to trigger an

---

[3]Though it is unclear from the parties' submissions why McAdam sought relief in Vermont, the parties resolved that action through a stipulated order in May 2012.

in camera review is less than that required to apply the exception, which itself is lower than a preponderance of the evidence.

### A.   Scope of discovery

Under Federal Rule of Civil Procedure 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1) (emphasis added).  "Evidence is relevant if:  (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.  To be discoverable, relevant information "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Rockwood, as "[t]he party seeking information in discovery over an adversary's objection[,] has the burden of showing its relevance." Caouette v. OfficeMax, Inc., 352 F. Supp. 2d 134, 136 (D.N.H. 2005).

### B.   The crime-fraud exception

Despite the broad scope of permissible discovery countenanced by the Federal Rules, parties are not ordinarily allowed to discover materials protected by the attorney-client privilege or the work product doctrine.  See Fed. R. Civ. P.

26(b)(1).  The attorney-client privilege, recognized as "the oldest of the privileges for confidential communications known to the common law," Upjohn Co. v. United States, 449 U.S. 383, 389 (1981), protects from discovery confidential communications between a client and his or her attorney made for the purpose of obtaining legal advice.  See In re Grand Jury Subpoena (Mr. S.), 662 F.3d 65, 71 (1st Cir. 2011).  The central purpose of the privilege is

> to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.  The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.

Upjohn, 449 U.S. at 389.  Similarly, under the work product doctrine, "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . . ."  Fed. R. Civ. P. 26(b)(3)(A).  This permits the attorney-client relationship to be "free from unnecessary intrusion by opposing parties and their counsel," and prevents "[i]nefficiency, unfairness and sharp practices . . . in the giving of legal advice and in the preparation of cases for trial."  Hickman v. Taylor, 329 U.S. 495, 511 (1947).

Important as these protections are, they are not inviolate. The crime-fraud exception to privilege

> ensures that the attorney-client privilege will not extend to communications made for the purpose of getting advice for the commission of a fraud or crime. Thus, the attorney-client privilege is forfeited <u>inter alia</u> where the client sought the services of the lawyer to enable or aid the client to commit what the client knew or reasonably should have known to be a crime or fraud.

In re Grand Jury Proceedings (Violette), 183 F.3d 71, 75 (1st Cir. 1999) (internal citations omitted).  This is because "the reason for that protection--the centrality of open client and attorney communication to the proper functioning of our adversary system of justice–'ceas[es] to operate at a certain point, namely, where the desired advice refers <u>not to prior wrongdoing</u>, but to <u>future wrongdoing</u>.'"  United States v. Zolin, 491 U.S. 554, 562-63 (1989) (quoting 8 J. Wigmore, Evidence § 2298 (McNaughton rev. 1961)) (emphasis in original).  Under those circumstances, the privilege "takes flight."  Clark v. United States, 289 U.S. 1, 15 (1933).  It is generally accepted that the crime-fraud exception also applies to the work product doctrine.[4]

---

[4]While the analytical framework for determining whether the client's fraudulent or criminal activity has waived work product protection is less consistently developed than for the attorney-client privilege, the court need not address the contours of that framework definitively here.  The parties agree that the court should apply the framework for determining exceptions to the attorney-client privilege to all documents and communications at issue in this motion.

See, e.g., Craig v. A.H. Robins Co., 790 F.2d 1, 4 (1st Cir. 1986) ("[C]ontinuing fraudulent misrepresentation and cover-up vitiates not only any attorney-client privilege but also any work product immunity.").

The party invoking the crime-fraud exception bears the burden of "present[ing] evidence:  '(1) that the client was engag[ed] in (or was planning) criminal or fraudulent activity when the attorney-client communications took place; and (2) that the communications were intended by the client to facilitate or conceal the criminal or fraudulent activity.'"[5] In re Grand Jury Proceedings, 417 F.3d 18, 22 (1st Cir. 2005) (quoting Violette, 183 F.3d at 75) (emphasis in original).  To carry this burden, that party must demonstrate that "there is a reasonable basis to believe that the lawyer's services were used by the client to foster a crime or fraud." Id. at 23.  A "reasonable basis" is

---

[5]Under Rule 501 of the Federal Rules of Evidence, "[t]he common law--as interpreted by United States courts in the light of reason and experience--governs a claim of privilege . . . . But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."  The latter "proviso is designed to require the application of State privilege law" in diversity cases. Id., reporter's note (quoting House Report 93-650, House Committee on the Judiciary).  The court need not decide whether state privilege law applies, nor whether, if so, it extends to the communications at issue here, because both Rockwood and Devine argue the issue under federal law.  The court takes this as a tacit agreement that federal law governs. See, e.g., Saalfrank v. Town of Alton, 2009 DNH 162, 13 n.7.

"something less than a mathematical (more likely than not) probability that the client intended to use the attorney in furtherance of a crime or fraud." Id.

The client's state of mind controls this analysis. "[T]he attorney-client privilege is forfeited inter alia where the client sought the services of the lawyer to enable or aid the client to commit what the client knew or reasonably should have known to be a crime or a fraud." United States v. Rakes, 136 F.3d 1, 4 (1st Cir. 1998). As the First Circuit has emphasized, before piercing the protections of privilege under the crime-fraud exception, "it is not enough to find reasonable cause to believe that the client is guilty of crime or fraud. Forfeiture of the privilege requires the client's use or aim to use the lawyer to foster the crime or the fraud." In re Grand Jury Proceedings, 417 F.3d at 23 (emphasis in original).

### C.   In camera review

Rockwood has not asked the court to apply the crime-fraud exception outright, but rather to review the documents in question in camera to determine whether the crime-fraud exception applies. As "a smaller intrusion upon the confidentiality of the attorney-client relationship than is public disclosure," in camera review requires "a lesser evidentiary showing . . . than is required ultimately to overcome the privilege." Zolin, 491

11

U.S. at 572 (internal citations omitted).  Here, then, in order
to trigger an in camera review, a lesser showing than even the
lower-than-preponderance quantum of proof required to establish
the crime fraud exception, see In re Grand Jury Proceedings, 417
F.3d at 23, is required.  The party seeking in camera review need
only show "a factual basis adequate to support a good faith
belief by a reasonable person that in camera review of the
materials may reveal evidence to establish the claim that the
crime-fraud exception applies," Zolin at 572 (internal citations
omitted).

        In camera review for purposes of determining the merits of a
claim of privilege does not destroy any privilege the documents
may enjoy, Zolin, 491 U.S. at 568-69, and is particularly
appropriate when, as here, it is "hard to determine whether the
attorney-client relationship has been misused by the client for
crime or fraud without seeing the document . . . as to which the
privilege is claimed."  In re Grand Jury Proceedings, 417 F.3d at
22.

## II.  **Analysis**

        In discovery in this action, Rockwood has sought
(presumably, inter alia) four categories of documents that the
defendants have withheld on the basis that said documents are
protected by the attorney-client privilege, the work product

12

doctrine, or both.  These include documents concerning:  (1) the
Ohio Action; (2) the New Hampshire Collection Action; (3) the
Rockwood loan; and (4) a lease between McAdam and Monster
Storage.  Defendants maintain that none of the documents sought
are relevant to this action and that, even if they were, the
crime-fraud exception does not withdraw any protection from them.
A telephonic conference with the parties on April 29, 2015, did
not resolve this dispute.[6]

In seeking access to these documents, Rockwood describes
three "frauds" by McAdam:  (1) McAdam's fraud on the court in the
Ohio Action in 2006; (2) McAdam's misrepresentations to Rockwood
to induce the loan agreement in July 2011[7]; and (3) McAdam's
alleged alteration and/or falsification of documents describing
how McAdam used the loan proceeds after the loan was disbursed.

---

[6]The court undertook to resolve this dispute utilizing the
informal discovery dispute resolution procedure outlined in its
order of November 7, 2014 (document no. 19).  After hearing the
parties' positions, the court determined that its informal
process did not lend itself to this situation and ordered
briefing on the instant motion.

[7]Devine contends that these actions cannot constitute a
"fraud" for the crime-fraud exception because it plans to move to
dismiss Rockwood's complaint "for lack of specificity."
Opposition to Motion to Compel (document no. 23) at 4.  As no
such motion has yet been filed, Rockwood's complaint yet sounds
in fraud.  In any event, the majority of courts do not require a
party to plead a specific crime or cause of action in fraud for
the crime-fraud exception to apply.  See Edward J. Imwinkelried,
The New Wigmore: Evidentiary Privileges § 6.13.2 (2010)
(collecting authority).

Rockwood's claims in this action related only to the second of
these.  While the Supreme Court once suggested that the crime-
fraud exception only vitiates privilege from communications in
furtherance of the crime or fraud at issue in the case at hand,
see Alexander v. United States, 138 U.S. 353, 359 (1891), that
limitation is generally considered dicta and has not been
followed.  See In re Berkley & Co., Inc., 629 F.2d 548, 554-55
(8th Cir. 1980); see also In re Grand Jury Investigation, 842
F.2d 1223, 1228 (11th Cir. 1987); Petition of Sawyer, 229 F.2d
805, 808-09 (7th Cir. 1956); Imwinkelried, The New Wigmore §
6.13.2 ("[N]o jurisdiction has adopted that view.").
Accordingly, McAdam's fraud on the Ohio court and any post-
disbursement fraud may withdraw the protection of privilege from
communications in furtherance of it in this action if the
evidence, including the documents themselves, demonstrates that
McAdam used Devine's services to further or conceal such a fraud.

## A.   The Ohio Action and New Hampshire Collection Action documents

Devine argues that the court need not reach the question of
crime-fraud with respect to documents concerning the Ohio Action
and New Hampshire Collection Actions because those documents are
not relevant to plaintiff's claims.  Defendants have admitted (1)
that the New Hampshire Collection action was pending as of the

date of their legal opinion, and (2) that they knew it was pending at the time the legal opinion was written.[8]  Because those issues are no longer in dispute, defendants argue, plaintiff's requests for documents concerning both earlier litigations are not calculated to lead to the discovery of admissible evidence.

But as Judge DiClerico observed in a similar situation, "Federal Rule of Evidence 401 does not restrict relevance to evidence directed at disputed facts." Jenks v. Textron, Inc., 2012 DNH 119, 7-8.  Thus, defendants' admission of certain facts does not preclude Rockwood from seeking discovery concerning, for example, the extent of defendants' knowledge of those facts and defendants' state of mind in making the statements that form the basis of Rockwood's claims.  Evidence about the defendants' participation in the Ohio Action and, more specifically, their knowledge of McAdam's false representations in that action, may be relevant to rebutting Devine's defense that it had no reason to question McAdam's veracity about her prior litigations or any other issue.  Similarly, the nature and extent of defendants' knowledge of the New Hampshire Collection Action are relevant at least to whether defendants' admitted misrepresentations to

---

[8]But defendants are careful to point out that they still dispute whether their failure to disclose the litigation breached any duty to Rockwood.

Rockwood were made intentionally or negligently, and what
motivated them.  The court is not, therefore, persuaded that
defendants' admissions preclude Rockwood's inquiry into such
issues and concludes that documents in defendants' possession
concerning the Ohio Action and New Hampshire Collection Actions
are sufficiently relevant to the issues joined in this suit to be
discoverable under the generous standard of Rule 26.

　　Having determined that the documents sought are relevant at
this preliminary stage, the court must now decide whether
Rockwood has demonstrated that a review of the Ohio Action and
New Hampshire Collection Action documents may reveal evidence
tending to show that the crime-fraud exception applies to them.
This requires evidence, separate from the documents themselves,
that the documents in question may show that (1) McAdam was
engaging in or planning criminal or fraudulent activities at the
time the communication took place or the documents were created
and (2) McAdam intended those communications to facilitate or
conceal that activity.

　　Defendants admit that they were aware of the New Hampshire
Collection Action at the time that they assured Rockwood, on
behalf of their client, that they were not aware of any pending
litigation against McAdam.  They also admit that Devine
participated in that litigation.  They further acknowledge that

16

they assisted McAdam in obtaining the loan from Rockwood and communicated with her in the time leading up to the loan agreement.  That is sufficient to suggest to a reasonable person that the withheld documents may show that McAdam employed Devine's services to perpetrate a fraud and, therefore, meets the low bar set for in camera review of documents concerning the New Hampshire Collection Action.

As to the Ohio Action documents, Rockwood must make a similar showing.  There is no question that McAdam engaged in a fraud.  The Ohio First District Court of Appeals affirmed that McAdam "committed fraud on the [plaintiff] and the court to avoid liability by altering two documents and presenting false facts in two affidavits" in the Ohio Action.  Law Offices of Jack Donenfeld v. McAdam, 1st Dist. Hamilton No. 070641, 2-3 (Sept. 17, 2008).  The question as to these documents, then, is whether a reasonable person can conclude that the withheld documents may show that McAdam used Devine's services to further or conceal that fraud.  Devine advised McAdam about the Ohio Action, as demonstrated by certain of Devine's invoices to McAdam from April through June 2006.  According to these invoices, Devine assisted McAdam with her answer and affirmative defenses and a motion to dismiss, and discussed strategy with her after the motion to dismiss was denied, including a strategy for determining the

17

authenticity of certain documents.  Devine does not claim that it
ceased advising McAdam after that time.  As such, a reasonable
person can infer that the documents in Devine's possession
concerning the Ohio Action may lead to evidence that McAdam
communicated with Devine in furtherance of her November 2006
fraud on the Ohio court.  Thus, Rockwood has adduced sufficient
evidence to support in camera review of those documents.

### B.   The post-closing documents

Rockwood is also seeking in camera review of a series of
documents and/or communications that took place after the July
21, 2011, loan agreement was signed.  Rockwood characterizes
these documents as "relating to the Rockwood Loan, the Ohio
Action, the New Hampshire Collection Action and the Monster
Lease."[9]  Plaintiff's Motion to Compel (document no. 22) at 10.
Devine argues, as an initial matter, that no post-closing
documents can be relevant to this action.  Even if they were
relevant, Devine contends, Rockwood has not offered evidence that
McAdam used Devine's services to perpetrate a fraud sufficient to
support in camera review.  The court disagrees on both counts.

---

[9]Rockwood cites to defendants' privilege log, generally, in
support of this characterization.  It would have been of
assistance to the court had Rockwood indicated (by, for example,
PrivID) specifically which documents it seeks review of, and
which of Rockwood's several categories of documents it believes
they fall into.

18

If the facts set forth in Rockwood's counterclaims in the Hillsborough Superior Court case are to be believed, Rockwood's allegations of post-closing fraud are particularly problematic in this regard.  Rockwood and McAdam entered into the loan agreement on July 21, 2011, and Rockwood subsequently disbursed the agreed-upon funds.  After McAdam defaulted on her first repayment, Rockwood sought assurances that she was using the loan proceeds in accordance with the agreement.  In response, Rockwood alleges, McAdam, among other things:  (1) falsified invoices and wire confirmations to suggest that she paid Maine Energy almost $400,000 more than Maine Energy informed Rockwood that it had been paid; (2) falsified invoices from Honeywell in the amount of over $36,000; (3) falsified bank statements referencing a non-existent TD Bank account to show the remaining funds; and (4) represented, through Devine, that she purchased 60,000 square feet of carpeting without substantiating that representation. Rockwood further alleges that Attorney McGinley submitted an affidavit to the Hillsborough Superior Court--and thus represented to that court and to Rockwood--that she had a copy of a signed lease from a new tenant preparing to take over the space recently vacated by McAdam's former primary tenant, when the proposed new tenant was, according to Rockwood, neither aware of the alleged lease nor seeking real estate in New Hampshire.

19

Devine first contends that post-closing communications between McAdam and Devine about the Rockwood loan are irrelevant because they were created after Rockwood's cause of action for fraud in the inducement accrued--that is, after Rockwood was induced to sign the loan agreement on July 21, 2011 and disbursed the funds.  Post-closing activity, Devine argues, cannot inform Devine's pre-closing intent.  But it can.  Evidence need not prove a fact to be relevant; it need only have "any tendency to make a fact more or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Documents about the loan, McAdam's obligations thereunder, and how the loan proceeds were to be used (or even how they _were_ used), even though generated after the agreement was signed, may shed light on Devine's intent.  Cf. Williamson v. Busconi, 87 F.3d 602, 603 (1st Cir. 1996) ("[S]ubsequent conduct may reflect back to the promisor's state of mind and thus may be considered in ascertaining whether there was fraudulent intent at the time the promise was made . . . .").  Post-closing documents may also reflect on the damages suffered by Rockwood if McAdam's continuing course of fraud after the July 21, 2011 closing, assisted or enabled by Devine, was intended to hamper Rockwood's investigation into whether McAdam's used the proceeds in accordance with the terms of the agreement

and induce Rockwood to delay, to its potential detriment, pursuing its post-default remedies.

Having established the documents' relevance at this preliminary stage, the question that follows is whether Rockwood has provided the court with evidence upon which a reasonable person could conclude that the documents Devine is withholding may lead to a showing that McAdam committed a fraud and that her communications with Devine were in furtherance of that fraud.  As discussed supra, the fraud invoked to overcome the crime-fraud exception need not be the same as the fraud at issue in the litigation.  And though the court is sensitive to the hazards of "permit[ting] opponents of the privilege to engage in groundless fishing expeditions, with the district courts as their unwitting (and perhaps unwilling) agents," Zolin at 571, the evidence submitted by Rockwood suggests that McAdam continued to engage in fraudulent activities with respect to the Rockwood loan after the date of the agreement.  The court need not now decide whether the crime-fraud exception applies, only that a reasonable person could infer from the evidence submitted that McAdam's communications with Devine after that date may lead to evidence that she used Devine to further or conceal that fraudulent activity.  The court concludes that one could and that Rockwood

has adduced sufficient evidence to support _in camera_ review of the post-closing documents.[10]

### C.   The Monster lease

While Rockwood includes "a purportedly independent lease with one of McAdam's primary tenants, Monster Storage," in the list of topics about which it seeks documents in its memorandum, Rockwood does not explain what the lease is, how it is relevant, or whether documents relating to it may be subject to the crime-fraud exception and, if so, how.  In short, plaintiff has not developed its argument as to why the court should compel production of, or even review _in camera_, "the Monster lease" or documents concerning it.  Lacking any grounds on which to evaluate that request, the court declines to do so.  Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 260 (1st Cir. 1999) ("The district court is free to disregard arguments that are not adequately developed."); Conservation Law Found. v. Pub. Serv. Co. of New Hampshire, 2013 DNH 167, 17 n.7.

---

[10]Despite its several objections, Devine has offered to submit these documents for the court's review "[i]f the Court is inclined to review" them, which the court construes as a waiver of its objection to the motion to the extent it applies to the post-closing documents.  Surreply Concerning Plaintiff's Motion to Compel (document no. 25) at 5.  For the reasons discussed _supra_, the court is so inclined.

**D.   Discretionary factors**

Having determined that Rockwood has made the requisite evidentiary showing to support <u>in camera</u> review of three categories of documents, the court concludes that the discretionary factors also favor such a review.  These factors include

> the volume of materials the district court has been
> asked to review, the relative importance to the case of
> the alleged privileged information, and the likelihood
> that the evidence produced through in camera review,
> together with other available evidence then before the
> court, will establish that the crime-fraud exception
> does apply.

Zolin, 491 U.S. at 572.  While the number of documents listed on Devine's privilege log--227 in total--is more than the court would prefer to review, it is not prohibitive.  The information sought by Rockwood, and which may be covered by the crime-fraud exception, goes to the heart of plaintiff's claims in this action --especially that concerning the New Hampshire Collection Action. And, as discussed <u>supra</u>, Rockwood has adduced sufficient evidence to suggest that these documents, together with the evidence submitted in connection with this motion, may establish that the crime-fraud exception applies.

**E.   McAdam's absence**

Finally, Devine argues that the court cannot find that the crime-fraud exception applies because McAdam, Devine's client who

23

holds the privilege, is not before the court.  Applying the exception to evidence of Devine's own alleged misconduct, it argues, "is not an accepted or recognized use of the exception," Opposition at 2, and is contrary to the purpose of the exception --that is, to prevent the client from using the privilege to shield fraudulent activity through use of counsel.[11]  At the very least, Devine argues, McAdam should be heard before any such decision.

The cases cited by Devine in support of this argument offer a little guidance.  There, the Courts of Appeals for the Third and Ninth Circuits[12] held only that the party opposing disclosure in a civil case--here, Devine--must be allowed an opportunity to submit evidence in opposition before a finding that the crime-

---

[11]Here, Devine misses the mark.  Were the court inclined to base its decision on policy (and it is not so inclined in the face of clear precedent), it would look to the policy behind the attorney-client privilege, and not the policy underlying an exception thereto.  That privilege serves to encourage clients to communicate all relevant facts to their attorneys so that attorneys may render appropriate advice in the service of justice.  See Upjohn, 449 U.S. at 389.  That purpose is frustrated when the client abuses that relationship and uses the attorney to further fraudulent or criminal activity.  In any event, the court need not base its decision on policy grounds: it is clear from precedent that such abuse evaporates the privilege and what the parties must show to invoke it.  See In re Grand Jury Proceedings, 417 F.3d at 22.  Whether the defendant is the attorney or the client makes no difference.

[12]The Court of Appeals for the First Circuit has not addressed this issue.

fraud exception applies. Haines v. Liggett Grp. Inc., 975 F.2d 81, 96-97 (3d Cir. 1992), as amended (Sept. 17, 1992) ("[W]here a fact finder undertakes to weigh evidence in a proceeding seeking an exception to the privilege, the party invoking the privilege has the absolute right to be heard by testimony and argument."); In re Napster, Inc. Copyright Litig., 479 F.3d 1078, 1093 (9th Cir. 2007), abrogated on other grounds by Mohawk Indus., Inc. v. Carpenter, 558 U.S. 100, 130 (2009) ("[I]n civil cases where outright disclosure is requested the party seeking to preserve the privilege has the right to introduce countervailing evidence.").  But, they also recognized that a court may properly find it appropriate to review the documents in camera solely on a showing by the party attempting to pierce the privilege.  Haines, 975 F.2d at 96 ("For in camera inspection, it would be sufficient for the district court, in its discretion, to consider only the presentation made by the party challenging the privilege."); Napster, 479 F.3d at 1092.  Even under this persuasive authority, then, Devine has already received at least as much process as it is due at this stage.

It is less clear whether due process requires that McAdam, who is not a party to this case, must be afforded an opportunity to rebut the evidence submitted by Rockwood and, if so, at what stage she must be heard.  While it is not, as Devine contends,

unprecedented for a court to apply the crime-fraud exception to otherwise privileged material without hearing from the privilege holder, other considerations in favor of secrecy have informed decisions to do so in those cases. For example, in Violette, the First Circuit concluded that, in the context of grand jury proceedings, "the government may proffer ex parte the evidence on which it bases its claim that a particular privilege does not apply, and that the court may weigh that evidence, gauge its adequacy, and rule on the claim without affording the putative privilege-holder a right to see the evidence proffered or an opportunity to rebut it." 183 F.3d at 79. Similarly, in United States v. Weed, the magistrate judge concluded that the privilege holder need not be heard because of an overriding concern that such notice "may compromise ongoing investigations." No. 14-10348, 2015 WL 1774480, at *4 (D. Mass. Apr. 14, 2015). But in both Violette and Weed, the court invoked an overriding consideration in favor of maintaining the secrecy of grand jury proceedings and an ongoing investigation. There is no such policy in play here.

The privilege is held by the client. Absent waiver by the client, an attorney has a duty to assert the privilege on the client's behalf. See New Hampshire Rules of Professional Conduct, Rule 1.6. Because in camera review does not destroy the

privilege, Zolin, 491 U.S. at 569, the court concludes that Devine's submissions in support of retaining the privilege more than satisfy due process at this stage.  However, should the court determine, after in camera review, that Rockwood has made a prima facie case that the crime-fraud exception would dissolve the privilege enjoyed by any of the communications at issue, it will afford McAdam an opportunity to rebut that showing.

### III. Conclusion

For the reasons discussed above, the court GRANTS plaintiff's motion to compel[13] in part and orders defendants to submit to the court for in camera review the documents responsive to plaintiff's discovery requests concerning the Ohio Action, the New Hampshire Collection Action, and the post-closing Rockwood loan documents, regardless of their date of creation, that it has withheld on the basis of attorney-client privilege or the work product doctrine.  Defendants shall submit these documents on or before **July 17, 2015.**  The remainder of plaintiff's motion is DENIED.

---

[13]Document no. 22.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: July 9, 2015

cc:  Norman Williams, Esq.
     Robert F. O'Neill, Esq.
     Finis E. Williams, III, Esq.
     James C. Wheat, Esq.
     Pierre A. Chabot, Esq.