UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Rockwood Select Asset Fund
XI, (6)-1, LLC

    v.                                    Civil No. 14-cv-303-JL
                                                  Opinion No. 2016 DNH 024

Devine, Millimet & Branch, PA,
and Karen S. McGinley, Esq.

**CORRECTED MEMORANDUM ORDER**

As the court has discussed previously,[1] this action pits a disgruntled lender against the law firm that represented the defaulting borrower in the deal gone sour. Plaintiff Rockwood Select Asset Fund XI, (6)-1, LLC ("Rockwood"), now seeking to expand the scope of this litigation, asks the court's leave to amend its complaint to add a civil conspiracy claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1965(d), against defendants Devine, Millimet & Branch, PA, and Karen McGinley. The court denies Rockwood's request to significantly expand the scope of this litigation at so late a date.

The parties also brought several discovery disputes before the court pursuant to its informal discovery dispute resolution procedure[2] on January 22, 2015. To the extent that those issues

---

[1]See Order July 9, 2015 (document no. 26).

[2]See Order of November 7, 2014 (document no. 19).

were not resolved at the chambers conference that followed, they are disposed of as outlined below.

## I. **Background**

Rockwood filed this action in this court on July 8, 2014, alleging, in a one-count complaint, that the defendants failed to disclose material facts to Rockwood before Rockwood issued its $1.6 million loan to defendants' client, Martha McAdam. Specifically, in that complaint, Rockwood alleged that defendants failed to disclose the existence of litigation pending against McAdam in an opinion letter drafted and supplied to Rockwood shortly before the loan closed. Instead, Rockwood claimed -- and defendants admit -- that defendants issued an opinion letter stating that there was no litigation pending against McAdam as of July 21, 2011. Rockwood also contended that defendants similarly misrepresented to it that a tenant in McAdam's building, whose rent would be used to pay back the loan, was "a legitimate operating company which was independent of [McAdam] and entities owned and controlled by her" when, in fact, Rockwood alleges, it was not. To round out its original claim, Rockwood asserted that it relied on these representations when it agreed to make the loan.

The court held a preliminary pretrial conference on October 30, 2014, and subsequently issued an order, see document no. 19,

by which it set a January 5, 2015 deadline for any amendments to pleadings and ordered discovery to close on September 17, 2015. The latter deadline was later extended, upon the parties' joint motion, until December 2, 2015.  See document no. 33.  Precisely two weeks before that deadline -- and some ten and a half months after the deadline to amend pleadings -- Rockwood moved for leave to amend its complaint.

Rockwood now seeks to add a claim for a civil RICO violation, alleging that Devine and Attorney McGinley, along with McAdam and several businesses under her control, conspired to conduct a pattern of racketeering activity.  See 28 U.S.C. § 1962(d).  Specifically, Rockwood contends that McAdam and her various associated corporate entities engaged in a pattern of racketeering activity intended to defraud her various creditors between 2000 and 2012.  Proposed Amended Complaint (document no. 39-1) ¶¶ 6-8.  In support of these allegations, Rockwood details several acts of fraud allegedly perpetrated by McAdam prior to the loan currently at issue in this case and accuses McAdam of making fraudulent representations about the use of the funds from the loan and trying to avoid repaying the loan through a series of fraudulent activity targeting Rockwood and various courts in Vermont and New Hampshire.  Rockwood then alleges that defendants Devine and Attorney McGinley furthered this conspiracy by

engaging in various acts of wire fraud, see 18 U.S.C. § 1343, and mail fraud, see 18 U.S.C. § 1341, in connection with their representation of McAdam during that time period.  See Proposed Amended Complaint (document no. 39-1) ¶¶ 9, 266-286.

## II. **Applicable legal standard**

The court's scheduling order, which set a deadline for amending the pleadings, removed the standard for resolving this motion from the "freely given" rubric of Rule 15 to the "good cause" requirement of Rule 16.  Rule 15 provides that, outside of the opportunities afforded a party to amend its pleading as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."[3]  Fed. R. Civ. P. 15(a)(2).

However, as the parties here acknowledge, Rule 16 requires a party seeking to amend its pleadings after the relevant deadline has passed to also seek a modification of the court's scheduling order.  United States ex rel D'Agostino v. EV3, Inc., 802 F.3d 188, 192 (1st. Cir. 2015).  The court's imposed schedule "may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  The "good cause" standard "focuses on the

---

[3]Defendants did not consent to -- and, indeed, vigorously oppose -- Rockwood's motion.

diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent," Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004), though "prejudice to the opposing party remains relevant," O'Connell v. Hyatt Hotels of P.R., 357 F.3d 152, 155 (1st Cir. 2004).  The length of Rockwood's delay in seeking to amend its complaint counsels against granting Rockwood's motion, especially in light of the prejudice that injecting a RICO claim into the suit at the tail end of the discovery would impose on the defendants.

### III. Analysis

#### A. Delay

Rockwood's motion to amend comes over ten months after the deadline to file amended pleadings, and a little over sixteen months after it filed its initial complaint.  This significant passage of time, during which Rockwood never even raised the spectre of a potential amendment to its complaint, weighs against allowing Rockwood to insert a new cause of action into the case at this juncture.  See Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004) ("[T]he longer a plaintiff delays, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend."); Cruz v. Bristol-Myers Squibb Co., PR, 699 F.3d 563,

570 (1st Cir. 2012) (affirming denial of motion to amend brought nine months after scheduling order deadline).

There is, really, no dispute that Rockwood was or should have been aware of the vast majority of the predicate acts of fraud that underpin its proposed RICO claim.  Many of these predicate acts are frauds that Rockwood alleges McAdam committed against Rockwood itself, or upon courts in the context of actions to which Rockwood was a party, in 2011 and 2012.  See Proposed Amended Complaint (document no. 39-1) ¶¶ 140-265.  During those actions, Rockwood repeatedly accused McAdam of falsifying documents relating to her use of the loan funds and documents submitted to Vermont and New Hampshire courts.  See Chabot Aff't Ex. A (document no. 50-7) ¶ 25; Proposed Amended Complaint (document no. 39) ¶¶ 168-169.  On August 22, 2012, Rockwood informed defendants that it possessed "hard evidence of numerous instances in which Ms. McAdam has falsified documents . . . misappropriated lender, tenant, and vendor funds, and engaged in a continuing pattern of misrepresentation and fraud . . . ." Chabot Aff't Ex. E (document no. 50-7) at 3-4.

Rockwood also knew or had ample opportunity to learn about McAdam's alleged fraud on Citigroup in 2005 and the fraud that the court in Hamilton County, Ohio found that McAdam had practiced upon it.  In its proposed amended complaint, Rockwood

alleges that McAdam obtained the 2005 loan from Citigroup by invoking a fraudulent lease with a tenant that she controlled, Monster Storage. Proposed Amended Complaint (document no. 39-1) ¶¶ 31-35. But defendants' failure to disclose Monster's lack of independence is one of the misrepresentations that Rockwood also alleged in its original complaint. See Complaint (document no. 1) ¶¶ 15-18. Rockwood also appears to have possessed the closing binder for McAdam's loan through Citigroup no later than August 2012, see Chabot Aff't (document no. 50-2) ¶ 14, and so was aware of that loan to McAdam before it brought this action. As for the Ohio court's findings as to McAdam, and the Ohio appellate court's affirmation of those findings, Rockwood was aware of those no later than August 2012 as well. See Chabot Aff't Ex. A (document no. 50-3) ¶ 25(e). Neither party has suggested that the documents filed with the Ohio courts in connection with that action were not a matter of public record.

Though it may have known about McAdam's ongoing fraudulent behavior before it filed its complaint in this action, Rockwood contends, it was only through discovery that Rockwood learned about Devine's and Attorney McGinley's intent to conspire with McAdams to further her alleged racketeering activity. See Motion (document no. 44) at 1-2; Reply (document no. 60) at 2-9. But Rockwood knew of McAdam's activities, as described above, no

later than 2012.  And Rockwood was further aware at that time that the defendants had represented McAdam at least from 2005 through mid-2012, including in connection with the Ohio action, the Rockwood loan in 2011, and the post-loan proceedings with Rockwood.[4]  In no small part, Rockwood's proposed amended complaint infers the defendants' alleged knowledge and intent to conspire with McAdam from events that occurred during the course of that representation.  Rockwood could as easily have drawn most of these inferences from its knowledge of McAdam's activity, the Ohio action, the Rockwood loan, and its own post-closing interactions with McAdam and her counsel.  And in a civil RICO claim, as in a claim for fraud, the "intent, knowledge, and other conditions of a person's mind may be alleged generally" in the complaint.  Fed. R. Civ. P. 9(b).  The court is therefore not convinced that Rockwood could not have attempted to raise its RICO claim much earlier in this action -- if not, indeed, at the outset.

---

[4]Some six weeks after briefing on plaintiff's motion to amend was complete, defendants moved to supplement their opposition with several years' worth of defendants' invoices to McAdam that were in Rockwood's possession.  See Emergency Motion (document no. 73).  The court did consider these documents, as well as Rockwood's arguments in response, see Response to Emergency Motion (document no. 75), and can only conclude that Rockwood was, or ought to have been, well aware that defendants represented McAdam in a series of transactions and litigation beginning at least in 2001.

**B.   Prejudice**

Belated motions to amend the complaint are "[p]articularly disfavored" when their "timing prejudices the opposing party by requiring a re-opening of discovery with additional costs, a significant postponement of the trial, and a likely major alteration in trial tactics and strategy."  Steir, 383 F.3d at 12 (quotations omitted).  Here, plaintiff moved to amend a mere two weeks before the close of the discovery period[5] -- a deadline already extended once by the parties.  The defendants would suffer at least some prejudice if the scope of the action were so significantly expanded as injecting a civil RICO conspiracy claim would require at this late stage in the litigation.  First, as both parties acknowledge, this action -- brought by a lender not against the defaulting party, but against her attorneys -- has required a somewhat painstaking approach to discovery in light of the privilege that generally protects communications between attorneys and their clients made for the purpose of obtaining legal advice.[6]  The discovery that would need to be revisited in

---

[5]A deadline that, the court notes, passed nearly two months before the parties brought the discovery disputes discussed below to its attention.

[6]During this process, the parties have sought the court's assistance in resolving several discovery-related issues.  For example, the court has conducted four conferences, both telephonic and in chambers, to resolve discovery disputes in accordance with the procedure outlined in its November 7, 2014

light of Rockwood's proposed new claim may not be quite so broad as the defendants allege, but it would require at least some reconsideration of the discovery already conducted.

Second, and of great concern to the court, is the potential that the interests of the two defendants, who have until this time been represented by the same counsel, may diverge in the face of a civil RICO conspiracy allegation of this scope. Injecting such a potential for conflict after the majority of discovery in this action has been taken -- including after Attorney McGinley's deposition -- would prejudice the defendants, as would the resulting "major alteration in trial tactics and strategy." Id.

Nor is the court convinced by Rockwood's suggestion[7] that, if it had sufficient knowledge to assert its RICO claim earlier in the action, then the defendants -- who knew more about their

---

order. Procedural Order of April 29, 2015, Minute Entry of August 10, 2015, Minute Entry of November 19, 2015, and Minute Entry of January 22, 2016. On plaintiff's motion, the court has, further, conducted multiple in camera reviews of documents under the crime-fraud exception to the attorney-client privilege and work product doctrine, and issued four orders on the subject. Order of July 9, 2015 (document no. 26); Order of August 10, 2015 (document no. 27); Order of August 14, 2015 (document no. 28); Order of September 15, 2015 (document no. 35). And more is ordered infra.

[7]"Nor do Defendants attempt to reconcile their argument that they did not realize a RICO claim was possible prior to depositions, and were prejudiced as a result, with their argument that Rockwood should have realized it had a RICO claim sooner." Response to Emergency Mot. (document no. 75) at 1.

history with McAdam than Rockwood -- ought to have arranged their defense accordingly ab initio.  The plaintiff is obligated, by its complaint, to put the defendant on notice of its asserted claims.  See [Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 84 (1st Cir. 2008)](#) ("The fundamental purpose of our pleadings rules is to protect a defendant's 'inalienable right to know in advance the nature of the cause of action being asserted against him.'") (citations omitted).  This allows the defendant to answer, and then defend himself against, those asserted claims.  And that happened here.  Rockwood brought this action claiming misrepresentation by the defendants.  The defendants arranged their litigation strategy in response to the claim of which it was notified by Rockwood's complaint.  Regardless of whether the defendants knew, at the outset, that Rockwood could have brought a civil RICO conspiracy claim -- and the court takes no position on whether they did -- the defendants would suffer prejudice if required to substantially change their litigation strategy at the tail end of discovery in response to a claim that could have been asserted, but was not, at the beginning of the litigation.  This is especially true where a newly introduced conflict of interest may require the defendants to seek separate counsel.

Accordingly, the court DENIES Rockwood's motion for leave to amend its complaint.[8]

## IV. Sealed documents

By its order of November 18, 2015, the court allowed documents related to Rockwood's motion to amend the complaint to be filed under seal. Acknowledging, as this court often has, the public's right to access judicial proceedings, see In re Providence Journal Co., 293 F.3d 1, 13 & n.5 (1st Cir. 2002), the court orders that these documents[9] be unsealed.

## V. Discovery issues

On January 22, 2016, the court and the parties, utilizing the informal discovery dispute resolution procedure elected by the parties and outlined in the court's order of November 7, 2014,[10] held a chambers conference to discuss a number of disputes between the parties that arose near the end of the discovery period. Based upon the court's discussion with counsel during that conference, the court orders as follows:

---

[8] Document no. 37.

[9] This includes document nos. 39, 44, 46, 51, 53, 60, 61, 64 and 75.

[10] Document no. 19.

12

1. Defendants will produce Matthew Johnson for deposition.
2. Devine will prepare and produce a witness pursuant to Rule 30(b)(6) on the topic of Devine's knowledge of lawsuits brought by Attorney Jack Donenfeld against McAdam.
3. Defendants will deliver to the court for <u>in camera</u> review, on or before February 15, 2016: (a) the email concerning the allegedly forged trustee process paperwork and (b) the disputed documents concerning the lease referenced in Attorney McGinley's August 7, 2012 affidavit.
4. The court denies Rockwood's request that the court order the defendants to supplement their responses to certain requests for admission propounded by Rockwood.
5. Rockwood has requested, and defendants resist, production of Devine's invoices for work done on behalf of McAdam and her associated entities since 2000. The court understands that Rockwood has, since the discovery conference, produced such invoices already in its possession. <u>See</u> Defendants' Emergency Motion (document no. 73) Ex. A. On or before February 15, 2016, Rockwood will produce to defendants any remaining such invoices. On or before February 22, 2016,

      defendants will produce to Rockwood any invoices not already produced by Rockwood, with appropriate redactions for privilege and a privilege log reflecting the bases for those redactions.

6. Rockwood will produce the documents requested concerning the 2001 FINRA finding about Dan Purjes on or before February 15, 2016.

7. Defendants allege that certain communications described on Rockwood's privilege log were improperly withheld because the communications were sent to certain third parties, including Todd Enright. This issue is not amenable to resolution through the court's informal process. If the parties have not already resolved it among themselves, defendants may move to compel the production of these communications and the parties may brief the issue in accordance with the Federal Rules of Civil Procedure and this district's Local Rules.

8. Rockwood will either (a) separately produce those documents previously excluded from its production of Dan Purjes' file on grounds that they were previously produced, or (b) provide defendants with the information necessary to identify those previously-produced documents, such as the Bates numbers thereof.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: February 8, 2016

cc: Matthew B. Byrne, Esq.
    Norman Williams, Esq.
    Robert F. O'Neill, Esq.
    David A. Boyd, Esq.
    Finis E. Williams, III, Esq.
    James C. Wheat, Esq.
    Pierre A. Chabot, Esq.