UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Rockwood Select Asset Fund
XI, (6)-1, LLC

     v.                          Civil No. 14-cv-303-JL
                          Opinion No. 2016 DNH 191P
Devine, Millimet & Branch, PA,
and Karen S. McGinley, Esq.


**MEMORANDUM ORDER**

Before the court are the parties' several motions in limine
seeking to exclude a variety of evidence and areas of inquiry
from the upcoming trial of this action, and for miscellaneous
other relief in connection with the trial.

This case arises out of a law firm's allegedly tortious
representations concerning its client to a lender.  Plaintiff
Rockwood Select Asset Fund XI, (6)-1, LLC, sued defendants
Devine, Millimet & Branch, PA, and Karen S. McGinley, Esq., on a
theory of negligent (or even fraudulent) misrepresentation.
Rockwood alleges that defendants, in the process of assisting
their client, Martha McAdam, to secure a loan from Rockwood,
represented that (1) McAdam was not subject to pending or
threatened litigation, when, in fact, they knew that she was;
and (2) one of the major tenants of the collateral property was
independent of McAdam when, in fact, it was not.

The court, having laid out the background of this action in numerous prior orders, does not repeat itself here.  See, e.g., Rockwood Select Asset Fund XI, (6)-1, LLC v. Devine, Millimet & Branch, PA, 2015 DNH 135; Rockwood Select Asset Fund XI, (6)-1, LLC v. Devine, Millimet & Branch, PA, 2016 DNH 24.  It addresses each of the parties' motions in turn.

The court reminds the parties that the rulings herein are made without prejudice to revisiting particular issues in response to circumstances that might arise during trial.  Furthermore, these rulings are limited to grounds argued in the parties' filings.  The court reserves the right to assess other factors at trial, such as authenticity, hearsay, and best evidence, see Fed. R. Evid. 800 et seq., 900 et seq., and 1000 et seq., and where appropriate, arguments and grounds not raised by counsel.

## I.   Motions to exclude expert testimony

### A.   Defendants' motion to exclude expert testimony[1]

The defendants seek to exclude the supplemental report of plaintiff's rebuttal expert, Jonathan E. Hochman.  Rockwood submitted this alleged rebuttal report on December 4, 2015, well after the September 1, 2015 rebuttal expert disclosure deadline set by the court's (largely agreed to) scheduling order.  See

---

[1] Document no. 66.

Amended Discovery Plan (document no. 20) at 3; Order of
September 2, 2015.

A party that intends to offer the testimony of an expert
witness at trial must disclose the identity of that witness and
the witness's written report, as contemplated by Federal Rule of
Civil Procedure 26(a)(2)(B), "at the times and in the sequence
that the court orders." Fed. R. Civ. P. 26(a)(2)(D). When a
party fails to comply with that obligation, "the baseline rule
is that the required sanction in the ordinary case is mandatory
preclusion" of the late-disclosed information. Harriman v.
Hancock Cty., 627 F.3d 22, 29 (1st Cir. 2010) (internal
quotations omitted); see Fed. R. Civ. P. 37(c)(1) (a party that
fails to disclose under Rule 26(a) "is not allowed to use that
information or witness to supply evidence . . . at a trial").
While, "in its discretion, the district court may choose a less
severe sanction," Esposito v. Home Depot U.S.A., Inc., 590 F.3d
72, 78 (1st Cir. 2009), the court concludes, based on the "array
of factors" endorsed by the Court of Appeals, id., that
preclusion is warranted here. These factors include "the
sanctioned party's justification of the late disclosure; the
opponent-party's ability to overcome its adverse effects (i.e.,
harmlessness); the history of the litigation; the late
disclosure's impact on the district court's docket; and the

sanctioned party's need for the precluded evidence." Harriman,
627 F.3d at 29.

Hochman opined, in his initial report,[2] that certain server
logs for an Ohio state court website could indicate whether
anyone accessed an opinion issued by that court in 2011 and,
further, whether anyone did so after searching for Martha
McAdam's name.  He noted that counsel for the plaintiff were in
the process of obtaining those server logs.  Per the scheduling
order in this case, plaintiff's rebuttal expert report was due
on September 1, 2015.  On December 4, 2015 -- 3 months after
that deadline -- plaintiff's counsel produced the server logs
and disclosed Hochman's supplemental report, in which he opined
about the implications of their contents.

This is not the sort of supplementation contemplated by
Rule 26(a)(2)(E).  "A party may not use a supplemental report to
disclose information that should have been disclosed in the
initial expert report, thereby circumventing the requirement for
a timely and complete expert report." Marine Polymer Techs.,
Inc. v. HemCon, Inc., No. 06-CV-100-JD, 2010 WL 1427549, at *4
(D.N.H. Apr. 2, 2010) (quoting 6 Moore's Federal Practice
§ 26.131[2]).  Counsel's busy litigation schedule alone does not

---

[2] Defendants do not dispute the timeliness of Hochman's initial
report.

justify their failure to obtain these logs -- which were public records and which date from 2011 -- well before this litigation commenced, in a timely fashion.  See Plaintiff's Opp. To Mot. to Exclude Supp. Report of Jonathan Hochman (document no. 69) at 2-3 & n.2.  This lack of justification -- coming in a case where plaintiff's counsel have missed several deadlines -- weighs heavily in favor of preclusion of the supplemental report.

The history of the litigation also weighs in favor of preclusion.  This is not the first time that plaintiffs have disregarded the court's scheduling order.  See, e.g., Rockwood, 2016 DNH 24 (denying motion to amend the complaint to include civil RICO violation brought ten and a half months after amendment deadline); see also infra Part II.A.  As with its late damages disclosures, Rockwood cannot justify this late disclosure by invoking the parties' agreement to conduct certain depositions after the close of fact discovery.  See Fed. R. Civ. P. 16(b)(4); Fed. R. Civ. P. 29(b) ("a stipulation extending the time for any form of discovery must have court approval if it would interfere with the time set for completing discovery"); see also Banks v. City of Philadelphia, 309 F.R.D. 287, 291 (E.D. Pa. 2015) (dismissing claim where plaintiff failed to comply with scheduling order despite parties' informal discovery agreement).

None of the other factors suggests that the court should impose any other remedy.  While neither the potential prejudice to the defendants (that is, defendants' missed opportunity to conduct discovery into Hochman's belated opinion and it bases) nor the late disclosure's impact on the court's docket (in particular, the expenditure of judicial resources to resolve the resulting motions practice where plaintiff issued the report knowing the deadline had passed) weighs heavily in favor of preclusion, those factors likewise do not weigh against it. Finally, unlike in Esposito, 590 F.3d at 79, this preclusion will not obviously or automatically result in dismissal of the case.  Nor will it significantly prejudice plaintiff's ability to put on its case.  Plaintiff may still present Hochman as an expert, who may testify as to the opinions disclosed in his initial report.

Accordingly, the court grants defendants' motion to exclude Hochman's supplemental report and testimony related thereto.

**B.    Plaintiff's motion to exclude expert testimony[3]**

Rockwood seeks to preclude the defendants' expert, John R. Levine, from testifying that a 2008 Ohio state court opinion concerning Martha McAdam would have appeared on the first page of Google's search results if the plaintiff had searched Google

---

[3] Document no. 67.

for "Martha McAdam" prior to closing on the loan in July 2011. Defendants contend that Levine's testimony lacks reliability because it is based on methods inadequate to support his conclusion.

Federal Rule of Evidence 702 is "[t]he touchstone for the admission of expert testimony in federal court litigation . . . ." Crowe v. Marchand, 506 F.3d 13, 17 (1st Cir. 2007). Under that rule, an expert witness may offer opinion testimony if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. As the structure of this rule suggests, before the factfinder in a case can consider expert testimony over the adverse party's objection, the trial judge, serving as "gatekeeper," must determine whether the testimony satisfies the relevant foundational requirements. See Daubert v. Merrell Dow Pharm. Inc., 509 U.S. 579, 597 (1993).

Here, the only foundational requirement that Rockwood questions is whether Levine's opinion -- that the 2008 Ohio court opinion would have appeared on the first page of the results of a Google search performed in mid-2011 -- is "the product of reliable principles and methods." Specifically,

Rockwood points out that -- as Levine acknowledged in his
deposition -- Google ranks search results using a proprietary
algorithm that has evolved over time.  Though Google has not
disclosed the specific variables that the algorithm accounts
for, or precisely how it accounts for them, or how that has
changed over time, Levine acknowledged that it is possible to
know at least some of those variables, such as a user's
geographic location and search history, as well as how many
times a particular result has been accessed.  By his own
admission, Levine did not account or control for at least these
known variables in performing his analysis.

As Levine explained during his deposition, though
impossible to control for all variables, Google has disclosed,
to a certain degree, how its "PageRank" algorithm functions.
Through that algorithm, the most relevant results for a search
are weighted to display earliest in a list of search results.
In his 2015 search for "Martha McAdam," Levine found that the
2008 Ohio court opinion appeared on the first page of the
results -- indeed, as the first result.  All but a handful of
the remainder of the results, he observed, were the familiar (to
popular search engine users) "generic links" to "sites that will
generally provide a search result for anything that looks like a
person's name."  Levine Report (document no. 67-4) ¶ 22.  Noting
that the 2008 Ohio court opinion's metadata has not changed

since Google first indexed it, Levine concluded that it would have appeared above such "generic links" in 2011 and, therefore, on the first page of a hypothetical search for "Martha McAdam" at that time.[4]

"While the party seeking to introduce the testimony bears the burden of proving its admissibility, the burden is not especially onerous, because 'Rule 702 has been interpreted liberally in favor of the admission of expert testimony.'" West v. Bell Helicopter Textron, Inc., 967 F. Supp. 2d 479, 484 (D.N.H. 2013) (quoting Levin v. Dalva Bros. Inc., 459 F.3d 68, 78 (1st Cir. 2006)).  The method by which Levine arrived at his opinion, see supra Part I.B., is not so inherently unreliable that exclusion is required.  That Levine might have, but did not, take into account other known factors that may affect the ranking of a search result goes more to the weight of his testimony than to its admissibility.  See Crowe, 506 F.3d at 18 ("Objections of this type, which question the factual underpinnings of an expert's investigation, often go to the weight of the proffered testimony, not to its admissibility.");

---

[4] The court derives this conclusion from a painstaking review of Levine's opinion and the exhibits submitted in support and opposition to this motion.  This court takes no pleasure in noting that neither Levine's report nor the parties' briefing on this motion were as helpful or clear as they could and should have been.

cf. Currier v. United Techs. Corp., 213 F.R.D. 87, 88 (D. Me. 2003) (failure to consider additional relevant factors goes to weight).

"Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596. Rockwood will have the opportunity to cross-examine Levine and present contrary evidence here. Accordingly, Rockwood's motion to exclude Levine's opinion is denied.

## II.   Motions in limine

### A.   Defendants' motion in limine no. 1:  Damages evidence[5]

The defendants seek to preclude Rockwood from presenting evidence or argument concerning its entitlement to damages above the $950,000 in unpaid principal that plaintiff claimed in its complaint.  As far as the court can discern, defendants ask the court to exclude evidence of (1) Rockwood's attorneys' fees, costs and expenses incurred in its efforts to recover under the loan after McAdam defaulted; (2) damages arising from Rockwood's loss of use of the funds; and (3) a default judgment against McAdam.[6]  As explained below, this motion is granted in part.  To

---

[5] Document no. 93.

[6] The defendants also appear to request exclusion of any evidence or argument that plaintiff is entitled to damages on the basis

the extent Rockwood seeks to introduce evidence of its damages beyond its actual pecuniary loss, its consequential damages, and prejudgment interest, and especially to the extent that Rockwood seeks to introduce evidence of damages for claims that it has not pled, defendants' motion is granted and that evidence will be excluded.

### 1.   Background

In its complaint, Rockwood sought as damages for claims of fraudulent and negligent misrepresentation: (1) $950,000, representing the unpaid principal on the loan at issue; (2) Rockwood's attorneys' fees and expenses accrued "in an effort to work out the Loan or realize on the collateral"; and (3) "Loss of the use of the funds by Plaintiff."  Compl. (document no. 1) at 8-9.  It echoed this demand in its initial disclosures pursuant to Rule 26(a)(1)(A)(iii), adding that it had not yet calculated the value of its loss of the use of the funds, which would "likely be the subject of expert testimony." Document no. 93-2 at 4.

On February 23, 2016, some 12 weeks after the close of fact discovery, Rockwood supplemented its initial disclosures to

---

of defendants' post-closing conduct.  See Defendants' Mot. in Limine (document no. 93) at 9-10.  This argument lacks the specificity necessary for the court to rule on it in any helpful manner at this time.

include a breakdown of the fees and expenses.  Document no. 93-3.  On March 10, 2016, 14 weeks after the close of discovery and a mere six weeks before the then-scheduled April 22, 2016 final pretrial conference, Rockwood emailed the defendants a copy of a default judgment for $2.8 million dollars that it had obtained against McAdam about two years earlier, in May 2014.  This default judgment, Rockwood's counsel's paralegal explained in the email, "better than anything we've provided to date, represents Rockwood's damages."  Document no. 93-1.

In its final pretrial statement, Rockwood finally calculated the value of its alleged loss of the use of the funds at just under $3 million.  Document no. 98 at 10-11.  It also set out the calculations underlying its claim for damages based on the default judgment against McAdam.  Id.

### 2.  **Default judgment and contract damages**

Plaintiff's claims in this action are based on defendants' alleged misrepresentations.  Such claims sound in tort.  See Plourde Sand & Gravel v. JGI E., Inc., 154 N.H. 791, 799 (2007) (citing Restatement (Second) of Torts § 552, at 126-27)).  In New Hampshire,[7] "[t]he general rule is . . . that the measure of

---

[7] Sitting in diversity, this court looks to state law to determine the bounds of available remedies.  Hutton v. Essex Grp., Inc., 885 F. Supp. 331, 333 (D.N.H. 1994) (citing Titan Holdings Syndicate, Inc. v. City of Keene, N.H., 898 F.2d 265, 273 (1st Cir. 1990)).

damages recoverable for misrepresentation, whether intentional or negligent, is actual pecuniary loss." Crowley v. Glob. Realty, Inc., 124 N.H. 814, 818 (1984). "Consequential damages," which "are those amounts the plaintiff lost because of the defendant's misrepresentation," are also recoverable. Johnson v. Puritan Press, Inc., 2014 DNH 244, 2 (citing Crowley, 124 N.H. at 817). Furthermore, a plaintiff who prevails in recovering on his pecuniary loss may be entitled to prejudgment interest on its damages award, see N.H. Rev. Stat. Ann. § 524:1-b, the rate of which is calculated according to a formula established by statute, see id. § 336:1.

Defendants seek to preclude Rockwood from relying on the default judgment that it obtained against McAdam as a calculation of Rockwood's damages in this action. Defendants characterize that damages calculus as contract-based lost profit damages owed Rockwood by McAdam for her breach of the loan agreement and a July 3, 2012 settlement agreement. Defendants then challenge admission of that default judgment as a basis for plaintiff's damages, arguing that defendants should not be held liable for (1) the breach of a contract to which they were not privy or (2) damages for a cause of action that the plaintiff did not plead.

While neither party makes this argument in an entirely elucidating manner, it appears to the court that Rockwood does

13

not defend the default judgment as an appropriate calculation of
damages on a claim sounding in tort.  Instead, it argues that,
because misrepresentations in opinion letters give rise to a
claim that sounds in both tort and contract, it is entitled to
either damages in tort or contract-based damages.  See
Plaintiff's Obj. to Mots. in Limine (document no. 118) at 18-19.
Specifically, Rockwood now argues that it is entitled to
contract damages because it was (as the lender) the intended
third-party beneficiary of the agreement between the defendants
and McAdam (the borrower) under which defendants issued the
loan-related opinion letter at issue here.  See id.; Supp. Mem.
Regarding Plaintiff's Breach of Contract Claim (document
no. 134).

    Rockwood raises this new theory of liability too late.  "It
is well settled that a defendant is entitled to be informed of
the theory on which the plaintiffs are proceeding and the
redress that they claim as a result of the defendant's actions."
Kravitz v. Beech Hill Hosp., L.L.C., 148 N.H. 383, 392 (2002)
(quoting Pike Indus., Inc. v. Hiltz Const., Inc., 143 N.H. 1, 3
(1998)); see also Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87,
91 (1st Cir. 2014) ("Although a complaint need not point to the
appropriate statute or law in order to raise a claim for relief
under Rule 8, its substance and structure must give the
defendants notice of the nature of the claim against them").

14

Had Rockwood raised a breach of contract claim in its complaint,
through a timely amendment, or even at any reasonable time prior
to its pre-trial statements and filings, Rockwood may possibly
have been entitled to maintain such a claim.  See Montgomery
Cty. v. Jaffe, Raitt, Heuer & Weiss, 897 F. Supp. 233, 237 (D.
Md. 1995) (permitting plaintiff to maintain a breach of contract
claim under a third-party beneficiary theory, under Maryland
law, for misrepresentations in an attorney opinion letter); but
see Citibank, N.A. v. City of Burlington, No. 2:11-CV-214, 2012
WL 2050730, at *2 (D. Vt. June 7, 2012) (dismissing, under
Vermont law, claim by recipient of opinion letter against law
firm under third party beneficiary theory).  If that is the law
in New Hampshire -- and it is not clear to the court that it is
-- Rockwood certainly had the opportunity to invoke that claim
earlier in the litigation.  It obtained the default judgment in
question some seven months before filing its complaint in this
action and 18 months before it sought to amend its complaint to
include far more complex, less traditional claims.  See
Plaintiff's Motion for Leave to File Proposed Amended Complaint
(document no. 37).

     But Rockwood did not avail itself of that opportunity.
Neither is the court persuaded by Rockwood's belated argument
that the complaint, as drafted, pleads and puts the defendants
on notice of such a claim.  See Supp. Mem. Regarding Plaintiff's

15

Breach of Contract Claim (document no. 134).  Though the
complaint does allege that Devine issued a written legal opinion
to Rockwood while representing McAdam in the days leading up to
the loan closing, nowhere did it put defendants on notice that
Rockwood claimed to be an intended third party beneficiary of
McAdam's agreement with Devine as a result.  See Ruivo, 766 F.3d
at 91 ("the plaintiff is not entitled to pursue 'every legal
theory that a court may some day find lurking in the penumbra of
the record.'" (quoting Rodriguez v. Doral Mortg. Corp., 57 F.3d
1168, 1172 (1st Cir.1995)); cf. Montgomery Cty., 897 F. Supp. at
237 (plaintiff pled both tort and contract theories).  Nor, so
far as the court is aware, had Rockwood raised this issue in
litigation prior to briefing this motion in limine.

     Accordingly, the default judgment against McAdam, and
argument by Rockwood in pursuit of contract-based damages based
thereupon or otherwise, will be excluded.

### 3.   "Loss of use" damages

     Unlike its contract-based damages, plaintiff did plead its
entitlement to "loss of use" damages resulting from defendants'
alleged misrepresentations.  Compl. (document no. 1) at 8.
Defendants have moved to exclude evidence or argument concerning
Rockwood's loss of use of funds claim on the grounds that
(1) Rockwood failed to support its "loss of use of funds"

calculations with expert testimony and (2) that it was untimely disclosed.  The court agrees that expert testimony would be necessary in this case to support the "loss of use" damages that plaintiff requests.  Plaintiff all but acknowledged as much when it conceded that such damages would "likely be the subject of expert testimony."[8]  Document no. 93-2 at 4.

Plaintiff's reliance on cases suggesting that a party's damage from the loss of use of an automobile -- not of funds -- may be proven by direct testimony of the party "comparing what it actually did, with what it would have done" alone is misplaced.  See Gelinas v. Mackey, 123 N.H. 690, 695-696 (1983); Rogers v. Nelson, 97 N.H. 72, 74-75 (1951).  Plaintiff's pursuit of damages based on its loss of use of the funds appears based

---

[8] Indeed, although the defendants have not explicitly raised this point in their filings, the court is not entirely convinced that "loss of use" damages are available to the plaintiff as a damages calculation separate from prejudgment interest.  It is commonly accepted that "[p]rejudgment interest serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress." West Virginia v. United States, 479 U.S. 305, 310 n.2 (1987); see also Lakin v. Daniel Marr & Son Co., 732 F.2d 233, 238 (1st Cir. 1984) ("We have expressly held . . . that one of the [New Hampshire prejudgment interest] statute's purposes is 'to provide compensation for the loss of the use of money damages during the pendency of the lawsuit.'").  Absent expert testimony on that score, the plaintiff has not demonstrated why it ought to be entitled to interest at a rate higher than that calculated according to the formula established by statute.

on the assumption that plaintiff would have invested the money that it loaned to McAdam, as well as what it spent in costs and fees, in a manner that returned compound interest at a rate of 20% per annum. See Rockwood's Pretrial Statement (document no. 98) at 10-11. Such a calculation is more analogous to that of future damages, such as loss of future earnings. In New Hampshire, future damages cannot be recovered unless the plaintiff "prove[s] [its] damages to a degree of reasonable certainty," a burden it cannot satisfy "without evidence of the amount of future damages reduced to present value." Hutton, 885 F. Supp. at 334. Expert testimony, albeit "not absolutely required, . . . is the preferred approach" to prove such damages, because "[t]he court will not admit evidence of economic data, such as interest and inflation rates, without a proper foundation." Id. at 335.

Even were expert testimony not necessary to establish the appropriate measure of "loss of use" damages under these circumstances (and if such damages were, in fact, available to the plaintiff), Rule 26 of the Federal Rules of Civil Procedure obligated Rockwood to disclose the computation of its damages and the underlying evidentiary material during discovery, without waiting for a discovery request from the defendants. Fed. R. Civ. P. 26(a)(1)(A)(iii). Rockwood failed to make this significant disclosure in the timely manner contemplated by

18

Rule 26.  The court is not persuaded by Rockwood's defense that, in essence, the parties' agreement to conduct certain depositions after the discovery deadline established by the court's order permitted the parties to informally extend all discovery deadlines without the court's consent.  See Fed. R. Civ. P. 16(b)(4).

Because Rockwood's damages calculations for loss of use of the funds are unsupported by expert testimony and untimely disclosed, the court grants defendants' motion in limine to exclude evidence of those damages to the extent they exceed what Rockwood may recover in prejudgment interest.

### 4.  Attorneys' fees and costs

Finally, defendants seek to exclude the itemized list that the plaintiff contends represent its costs and fees incurred in attempting to collect on the loan.  Defendants argue that this itemization, which Rockwood provided to defendants for the first time well after the close of discovery, should be excluded because it was untimely produced.[9]  This prejudiced defendants,

---

[9] To the extent that defendants contend that Rockwood failed to plead its entitlement to those costs and fees, that one-line argument, see Defendants' Mot. in Limine (document no. 93) at 5, fails for lack of development.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).  It would also fail on the merits.  The complaint does appear to allege facts underlying Rockwood's attempts to collect on the loan and seeks damages that include Rockwood's attorneys' fees and expenses accrued "in

they argue, in preventing defendants from pursuing discovery on the subject.

As discussed supra, Rule 26 obligated Rockwood to disclose, "without awaiting a discovery request,"

> a computation of each category of damages claimed by the disclosing party -- who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered[.]

Fed. R. Civ. P. 26(a)(1)(A)(iii). Here, again, Rockwood failed to make a timely disclosure of its damages calculations and the underlying evidence -- much, if not all, of which was or ought to have been in Rockwood's possession well before discovery closed. And, again, the court is unconvinced by Rockwood's excuses for its tardy supplementation of its initial disclosures or production of this evidence. Exclusion of the late-disclosed evidence under Rule 37 would not be inappropriate in a case such as this where, as discussed supra Part I.A., the plaintiffs have "repeatedly balk[ed] at court imposed deadlines." Esposito, 590 F.3d at 79 (citing Santiago-Díaz v. Laboratorio Clínico Y De Referencia Del Este, 456 F.3d 272, 277 (1st Cir. 2006); see also Harriman v. Hancock Cty., 627 F.3d 22, 30 (1st Cir. 2010)

---

an effort to work out the Loan or realize on the collateral." Compl. (document no. 1) at 8.

(affirming preclusion of late-disclosed evidence where late disclosure lacked justification).

The record suggests, however, that the prejudice to the defendants by plaintiff's late disclosure of these calculations is not significant.  See Cruz-Vázquez v. Mennonite Gen. Hosp., Inc., 613 F.3d 54, 58 (1st Cir. 2010).  Plaintiff produced its itemized demand for damages several weeks before the deposition of Rockwood's principal, Dan Purjes, affording defendants the opportunity to question Purjes on its contents.  It also produced, during the discovery period, documents concerning Rockwood's attempts to collect on the loan's principal and its attorney fees paid to attorney Chris Dugan during those attempts.[10]

---

[10] Rockwood disappointingly argues that defendants were not prejudiced as to Attorney Dugan's billing records because defendants had those records "in hand when they deposed him" but only asked him one question about them.  Plaintiff's Obj. to Mots. in Limine (document no. 118) at 22.  Defendants point out what Rockwood omitted:  that they had the documents "in hand" only because said documents were produced the very day of Dugan's deposition, affording them little time to question him on the documents' content.  Defendants' Mot. in Limine (document no. 93) at 7 n.1.

Accordingly, the court denies defendants' motion to exclude evidence of plaintiff's damages in the form of costs, fees, and expenses incurred in its efforts to realize the loan.[11]

## B.   Defendants' motion in limine no. 2: Post-loan representations[12]

Defendants also seek to exclude evidence and arguments concerning the defendants' conduct following the closing of the Rockwood loan on July 21, 2011.  Generally, they challenge the admissibility of evidence and argument concerning alleged misrepresentations that Rockwood contends the defendants made during the course of representing McAdam while Rockwood attempted to realize on the loan after McAdam defaulted.[13] Defendants challenge this evidence as irrelevant, unduly prejudicial, and improper fodder for cross examination under Rule 603(b).

"Evidence is relevant if:  (a) it has any tendency to make a fact more or less probable than it would be without the

---

[11] As discussed more fully _infra_ Part III.B., Rockwood has withdrawn its production of documents, made on April 12, 2016, which the court understands relate to these alleged damages.

[12] Document no. 93.

[13] Defendants noted three general examples of the allegedly fraudulent post-closing behavior in their motion to exclude this evidence.  See document no. 93 at 11-12  Plaintiff identified three more.  See document no. 118 at 11-12.  Each instance involves the submission of an affidavit or a verified complaint containing what Rockwood alleges are false statements.

evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.  As this court has previously observed, evidence of the defendants' behavior subsequent to the loan closing may shed light on the defendants' intent at the time of the closing.  See Rockwood, 2015 DNH 135, 20-21; see also Fed. R. Evid. 404(b)(2) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character," but "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.").  In the fraudulent misrepresentation context, the Court of Appeals has observed:

> As direct evidence is seldom available, fraudulent intent normally is determined from the totality of the circumstances.  And since 'subsequent conduct may reflect back to the promisor's state of mind and thus may be considered in ascertaining whether there was fraudulent intent' at the time the promise was made, proper application of the 'totality' test in the instant context often warrants consideration of post-transaction conduct and consequences, as well as pre-transaction conduct and contemporaneous events.

Williamson v. Busconi, 87 F.3d 602, 603 (1st Cir. 1996).  Thus, to the extent that the defendants' post-closing conduct may reflect on the defendants' negligent or fraudulent intent at the time of the closing, it may be relevant to these elements of the plaintiff's claims.  Further, post-closing statements and conduct could be relevant as the continuation of a plan undertaken prior to or at the time of the loan, or as efforts to

conceal the falsehood or origins of such negligent or fraudulent misrepresentations, or to delay their discovery or eventual disclosure.  Finally, evidence and argument concerning post-closing conduct by defendants that may have delayed, hindered or prevented the plaintiff from obtaining satisfaction on the loan, leading defendants to incur additional costs, may be relevant to plaintiff's claim for those damages upon a showing of a causal connection between defendants' conduct and plaintiff's costs.

To be clear, the court has not ruled this broad swath of evidence admissible.  The court merely declines to rule it entirely inadmissible at this pretrial stage, in light of the parties' briefing with respect to broad categories of documents and information rather than specific instances of conduct or specific pieces of evidence.  Defendants may raise their objections with greater specificity at trial.  Upon such objections, plaintiff should be prepared to explain how the evidence in question is relevant to its claims as described above, to its damages, or to some issue not as-of-yet raised by the parties or the court.

Nor is the court inclined to preclude this category of evidence and argument for lack of a "standard of care" expert. Defendants contend that Rockwood cannot demonstrate that any of that conduct was wrongful absent an expert who can establish the standard of care that an attorney must exercise when

24

representing a client.[14]  While expert opinion on this subject

may be required in the legal malpractice context, Wong v.

Ekberg, 148 N.H. 369, 373 (2002), the defendants have cited no

authority -- and this court is unaware of any -- holding that

such opinion evidence on standard of care is required to prove

an attorney or law firm's negligent or fraudulent

misrepresentation to a third party.

The question here is not whether the defendant's post-

closing statements or actions were *themselves* wrongful,

actionable, or violated any duty owed to a client or adverse

party, or caused the plaintiff's damages.  The question is

whether they are admissible to prove the plaintiff's claims or

damages.  That is a question of relevance under Rules 402 and

404, and is not in any way dependent on any precondition (see

Fed. R. Evid. 104(b)) or expert opinion evidence.  The

defendants have cited no authority to the contrary.

This is not to say that expert opinion evidence regarding

an attorney's professional obligations to clients and third

parties would not be relevant or admissible.  Such evidence

---

[14] This is the basis for defendants' contention that specific
instances of alleged post-closing misrepresentations cannot be
inquired into on cross examination.  See Fed. R. Evid. 608(b).
Absent an expert to establish the requisite standard of care,
defendants contend, the plaintiff cannot establish that
defendants' conduct was a "bad act."

might very well provide helpful context for the jury to evaluate the defendants' alleged conduct in this case, both at the time of the transaction and afterward.  But to say that such evidence might be admissible if offered by either party is not to say it is required to be offered by the plaintiff.  To the extent that the defendants argue that an expert is necessary to provide a context for these post-closing statements, defendants have long been well aware that plaintiffs attached some weight to these post-closing activities.  Nothing prevented the defendants from presenting an expert on that subject as part of its defense, and it is possible that witnesses on the parties' recently filed witness lists, several of whom are attorneys, could provide such testimony.

The defendants' motion to exclude evidence and argument concerning post-closing conduct is therefore denied, albeit -- as noted supra -- without prejudice to defendants challenging the introduction of specific evidence concerning this subject at trial.

### C.   Defendants' motion in limine no. 3: Banking records[15]

Defendants also seek to exclude certain bank records that plaintiffs obtained from two third-party banks via subpoenas

---

[15] Document no. 93.

served on March 3, 2016.[16]  Defendants challenge the documents as untimely and irrelevant.

As to timeliness, Rockwood procured the documents, and produced them to defendants, after the close of discovery. This, defendants argue, prevented defendants from conducting appropriate discovery into the documents.  To the extent that the subpoenas in question were trial subpoenas (see Fed. R. Civ. P. 45(a)(1)), they were not governed by the discovery deadline. Even if the subpoenas were actually issued in discovery (see e.g. Fed. R. Civ. P. 45(c)(2)) Rockwood represents that the documents so obtained are merely certified copies of bank records that were produced to defendants during the course of discovery -- indeed, before defendants deposed any witnesses in this case.  Insofar as this characterization of the documents is accurate, the defendants had ample opportunity to conduct discovery into the content of the documents and, accordingly,

---

[16] During an informal discovery dispute conference, defendants challenged Rockwood's issuance of trial subpoenas that called for production of documents at plaintiff's counsel's office after discovery closed but more than six weeks before trial. The court expressed its skepticism regarding the technical propriety of this use of trial subpoenas, see infra n. 18, but allowed Rockwood to proceed with the subpoenas upon the parties' agreement that Rockwood would produce the resulting documents to defendants immediately upon receipt.  See Order of March 9, 2016 (document no. 85) at 2.

are not prejudiced by the late production of certified copies.[17]
The court therefore will not exclude them on timeliness grounds.

Defendants' challenge to the documents' relevance, at least
as a broad category, is also misplaced.  Rockwood has alleged
that Attorney McGinley represented to Rockwood that McAdam had
no financial interest in the company whose rent payments McAdam
would use to repay the loan -- Monster Storage.  To the extent
Rockwood seeks to introduce the bank records as evidence that
McAdam did have such a financial interest, as defendants
predict, see Defendants' Mot. in Limine (document no. 93) at 15,
the bank records may have a tendency to make the falsehood of
Attorney McGinley's Monster Storage-related representation more
likely than it would be without those records.  See Fed. R.

---

[17] This is not to say that the court endorses the use of a
Rule 45 subpoena to require production of documentary evidence
at counsel's office well in advance of trial.  Subpoenas are
properly utilized to effectuate the production of documents or
things to a proceeding such as a trial, hearing, or deposition.
It seems to the court that requesting or allowing a subpoena
recipient to provide copies to counsel in lieu of the proceeding
is normally not inappropriate.  Requesting production of
originals to counsel in advance of a proceeding as a way of
complying with a subpoena, however, strikes the court as less
than proper, and as creating the potential for abuse of process.
The court takes no position as to whether that took place here,
but notes that plaintiff's counsel represent that they produced
the non-certified copies to defendants in July 2015.
Plaintiff's counsel were well positioned, then, to obtain
certified copies of these documents before discovery closed on
December 2, 2015, some five months later.

Evid. 401.  And the truthfulness of that representation is
certainly of consequence in this action.  Id.

Accordingly, the defendants' motion to exclude these
documents, as a broad category, is denied.

### D.   Defendants' motion in limine no. 4: 2006 representation in the 2006 Ohio litigation[18]

Finally, defendants seek to exclude any evidence or
argument concerning Devine's representation of McAdam in
litigation against Ohio Attorney Jack Donenfeld before an Ohio
state court in 2006.  Defendants argue that any such evidence is
irrelevant because Attorney McGinley has already admitted that,
at the time she wrote the opinion letter, she was aware that the
Ohio court found McAdam to have committed fraud on the court
during that action.  The court rejected this argument during
discovery, see Rockwood, 2015 DNH 135, 20-21, and rejects it
again here.  "Federal Rule of Evidence 401 does not restrict
relevance to evidence directed at disputed facts."  Jenks v.
Textron, Inc., 2012 DNH 119, 7-8.

Even if relevant, defendants argue, such evidence is
unfairly prejudicial, delaying, a waste of time, and cumulative.
See Fed. R. Evid. 403 (the court may exclude relevant evidence
"if its probative value is substantially outweighed by a danger

---

[18] Document no. 93.

of . . . unfair prejudice, . . . undue delay, wasting time, or needlessly presenting cumulative evidence.'"). First, defendants have not identified any way in which introduction of evidence concerning Devine's representation of McAdam in the 2006 Ohio litigation would prejudice Attorney McGinley or Devine. Second, defendants' argument that the 2006 Ohio litigation evidence will be cumulative, cause undue delay, or waste time is premised on the notion that <u>any</u> evidence concerning facts that Attorney McGinley has already admitted would satisfy those conditions. But, as the court has previously observed, such evidence may be relevant to more than merely whether McAdam was aware of the Ohio litigation. <u>See</u> <u>Rockwood, 2015 DNH 135</u>, 15-16. It may, for example, be relevant to Attorney McGinley's intent in making the alleged misrepresentation in the opinion letter, to Devine's knowledge of the findings concerning McAdam, or the credibility of McGinley or other witnesses. Further, Attorney McGinley is not the sole defendant in this action, or the only employee of the Devine firm whose knowledge, conduct, and intent regarding the Ohio litigation could be relevant in this action. As such, Attorney McGinley's admission as to her knowledge does not necessarily render all evidence concerning the 2006 Ohio litigation cumulative, delaying, or time-wasting.

30

Finally, defendants again advance the unsupported argument that such evidence is inadmissible absent an attorney expert to provide the jury with the standard of care expected of an attorney representing a client in litigation.  That argument fails here for the same reasons discussed supra Part II.C.

Defendants' motion to exclude all evidence and argument about Devine's representation of McAdam in the 2006 Ohio litigation is therefore denied.  To the extent that Rockwood intends to offer evidence concerning the 2006 Ohio litigation for purposes not identified by the defendants, such as to call Attorney McGinley's credibility into question, the court of course renders no ruling at this time.

### E.   Defendants' motion to preclude testimony of Devine attorneys[19]

Finally, defendants move to preclude Rockwood from calling five attorneys, currently or formerly associated with defendant Devine, Millimet & Branch, PA, to testify, and to preclude Rockwood from using certain demonstrative exhibits at trial.

### 1.   Attorneys Will, Pacik, and Johnson

The defendants ask the court to exclude the testimony of Attorneys Dan Will, Danille Pacik, and Matt Johnson.  This argument is based on defendants' contention that evidence

---

[19] Document no. 131.

concerning defendants' pre- and post-closing activities is not admissible.  See Parts II.B and II.D.  As the court denies those motions to exclude, wholesale, evidence of those activities, see id., the court also denies defendants' motion to exclude, wholesale, the testimony of these witnesses for the same reasons.

### 2.  Attorneys Gayman and DiCroce

Defendants also seek to exclude testimony by two members of Devine's opinion committee, Attorneys Benjamin Gayman and Camille DiCroce, who testified in deposition that they lack knowledge of the specific opinion letter at issue in this litigation.  Rockwood, in its objection, indicates its intention to introduce testimony by these witnesses concerning the process by which Devine issued opinion letters in 2011, arguing that the process is highly relevant to the defendants' intent in making the alleged misrepresentations in the opinion letter at issue. While the court is underwhelmed by Rockwood's argument -- particularly in light of the court's order of May 3, 2016, that said objection should contain a "complete description of the evidence" Rockwood intended to introduce through this testimony, and its relevance -- it declines to prohibit Rockwood from calling any particular witness on a pretrial basis.  Rockwood should, however, take care to order its witnesses with care, and

should be prepared for the court to preclude cumulative evidence at trial under Federal Rule of Evidence 403 for "wasting time." Fed. R. Evid 403.  Rockwood should further be prepared to proffer testimony under Rules 103(c) and 104(c) in order for the court to make such determinations.

### F.   Plaintiff's motion in limine no. 1:  Regulatory material[20]

Rockwood seeks to prevent the defendants from cross examining Rockwood's principal, Dan Purjes, concerning a National Association of Securities Dealers ("NASD") hearing panel decision from 2001 that censured Purjes and his financial firm for engaging in a "pump and dump" style stock sale. Rockwood contends that the NASD hearing panel decision is not probative of Purjes's character for truthfulness and is too remote in time such that any cross examination on the subject should be disallowed.  See Fed. R. Evid. 608(b); United States v. Thiongo, 344 F.3d 55, 59 (1st Cir. 2003).  The court grants Rockwood's motion in part and denies it in part.

The court may permit inquiry into "specific instances of a witness's conduct . . . if they are probative of the [witness's] character for truthfulness or untruthfulness." Fed. R. Evid. 608(b).  The NASD hearing panel's specific findings that Purjes

---

[20] Document no. 94.

made false statements or misrepresentations are probative of Purjes's character for truthfulness.  See Fed. R. Evid. 608(b). Specifically, the NASD hearing panel's findings that Purjes gave false testimony at the hearing and that Purjes intentionally withheld material information from customers who purchased shares from him or his firm are sufficiently "similar to the conduct at issue," that is, the credibility of Purjes's testimony at trial, to be admissible as impeachment material under Rule 608(b).  See Thiongo, 344 F.3d at 60; see also Caluori v. One World Techs., Inc., No. CV 07-2035 CAS VBKX, 2012 WL 2004173, at *10 (C.D. Cal. June 4, 2012) (evidence of prior frauds probative of witness's character for truthfulness).

Though Rockwood contends that these findings, dating back to 2001, are too remote in time to be probative to Purjes's present character for truthfulness, the court disagrees.  See United States v. Ulloa, 942 F. Supp. 2d 202, 207 (D.N.H. 2013) (allowing cross examination under Rule 608(b) on instances of conduct that occurred 14 years prior to testimony).  While the distance in time between 2001 and Purjes's testimony in this trial may be a valid consideration if Purjes had been exceedingly young and inexperienced at the time of those findings, he was not.  The acts for which Purjes was censured occurred well into his adult life and business career, and are

sufficiently probative of his character for truthfulness to permit inquiry under Rule 608(b).

Nor is such evidence unfairly prejudicial.  Purjes's character for truthfulness is not of minor significance in this case.  For example, the jury will be required to assess the credibility of his testimony regarding Attorney McGinley's alleged representation regarding the Monster Storage lease relationship, as well as his claims that he relied on Attorney McGinley's representations at issue in this action when deciding whether to enter into the loan agreement with McAdam, and that he would not have made the loan had the alleged misrepresentation not been made.  Accordingly, defendants may inquire into those acts under Rule 608(b).

Not everything in the NASD hearing panel decision is fair game on cross examination, however.  Evidence of the underlying offense for which Purjes was censured -- the "pump and dump" style stock sale, itself -- is, at best, marginally relevant to any claim or defense in this action.  And the stretch of time between that conduct and Purjes' testimony, as well as the likely resulting prejudicial effect of evidence that Purjes is a known stock manipulator, outweighs any probative value it may have as to his character for truthfulness.  See Fed. R. Evid. 403.  Fraudulent conduct may be, but is not necessarily, probative as to truthfulness in the same way that factually

false statements or testimony are.   But see United States v. Lanier, No. CRIM. H-10-258-4, 2014 WL 2331659, at *2 (S.D. Tex. May 29, 2014) ("The questions about the acquisition and sale of the . . . stock were within Rule 608 because, to the extent they implicated [the witness] in a fraudulent pump-and-dump scheme, . . . the questions were relevant to his truthfulness.").

### G.   Plaintiff's motion in limine no. 2: Enright allegations[21]

Rockwood also moves to preclude defendants from introducing any evidence of civil complaints and criminal and bankruptcy proceedings brought against Rockwood's agent, Todd M. Enright. This motion is also granted in part and denied in part.

As discussed supra Part II.F, the court may permit inquiry into "specific instances of a witness's conduct . . . if they are probative of the [witness's] character for truthfulness or untruthfulness." Fed. R. Evid. 608(b).  Rule 608(b) "does not require the proponent to establish prior untruthful conduct by the witness to a certainty before inquiring about it," but requires only that the proponent possess "some facts which support a general belief that the witness committed the offense or the degrading act to which the question relates." Ulloa, 942

---

[21] Document no. 95.

F. Supp. 2d at 205 (quoting United States v. Whitmore, 359 F.3d 609, 622 (D.C. Cir. 2004)).

Findings by a tribunal that an individual engaged in particular behavior ordinarily satisfy that requirement, and do so here.  Defendants accordingly may cross examine Mr. Enright concerning the District of Vermont bankruptcy court finding that Enright engaged in a "pattern of intentional deceit" to induce certain creditors into real estate loans.  Indeed, Rockwood concedes that the Vermont bankruptcy court's findings are fair game for cross examination.  See Plaintiff's Mem. in Support of Mot. in Limine (document no. 95-2) at 1 n.1.  And, as with Purjes, Enright is one of Rockwood's primary witnesses.  The court understands that Enright will testify that Attorney McGinley represented that Monster Storage existed independently of McAdam; Attorney McGinley, the court understands, denies making such a representation.  Enright's credibility is thus relevant and subject to inquiry under Rule 402 and 608(b) for the same and similar reasons discussed infra at Part II.F. as to Purjes.

But the same does not necessarily hold true for the unproven allegations in the Maine and Vermont civil actions.  To the extent that Enright confessed judgment in those cases, he did so only as to breach of contract claims, not the fraud or misrepresentation claims asserted against him.  Furthermore, the

decision of the District Court for the District of Maine, cited by defendants, recites facts in the summary judgment context, where all inferences are made in the non-moving party's favor. See Nagle v. Middlebury Equity Partners, LLC, 674 F. Supp. 2d 290, 292-93 (D. Me. 2009). Accordingly, unless Enright's testimony somehow opens the door for further inquiry in that direction, Devine may not inquire under Rule 608(b) as to the unproven Maine and Vermont civil action allegations against Enright under Rule 608(b).

Finally, defendants seek to introduce evidence of divorce proceedings in which Enright participated concurrent with his due diligence on the loan at issue in this action. As defendants point out, evidence of Enright's dire financial situation during that period -- and, in particular, the fact that Enright faced the possibility of incarceration for contempt of court for non-payment -- may be relevant to Enright's motivation for closing on the loan. The reason that Enright was in such straits, however -- that he was delinquent in child support payments -- lacks relevance to Enright's motivation or, at least, is not sufficiently probative thereto in light of its potential for prejudice, and will be excluded. See Fed. R. Evid. 403. Accordingly, the defendants may introduce evidence of and inquire into Enright's financial situation and possible consequences (incarceration for contempt), but not the

underlying, potentially prejudicial grounds therefor (nonpayment of child support).

## III. **Miscellaneous motions**

### A.   **Plaintiff's contempt motion[22]**

According to Rockwood, Martha McAdam failed to comply with one deposition subpoena, claiming illness on the date of the deposition, and has managed to avoid service of two subsequent subpoenas.  Rockwood asks the court to hold McAdam in contempt and also to exclude her testimony in light of the fact that she has avoided being deposed.

At the final pretrial conference, counsel for all parties represented that no party intends to call McAdam to testify at trial.[23]  The court accordingly denies plaintiff's motion as moot, without prejudice to revisiting the issue in the event that, contrary to expectation, McAdam is called to testify.

---

[22] Document no. 96.

[23] Though the court observes that defendants, in their final witness list, yet indicate that they "may call" McAdam to testify.  See document no. 129.

**B.   Defendants' motions to compel or exclude evidence[24] and to continue trial[25]**

On the eve of the final pretrial conference, defendants moved to compel the plaintiffs to produce documents and deponents concerning plaintiff's claims for fees and costs associated with their attempt to collect on the defaulted loan, and on plaintiff's claim for enhanced compensatory damages. Defendants brought this motion in light of the fact that plaintiff produced some such documents on April 12, 2016, a mere two weeks before the final pretrial conference, and raised the specter of enhanced compensatory damages[26] well after discovery closed.  Defendants also moved to continue the trial to allow time for this requested discovery.

---

[24] Document no. 123.

[25] Document no. 124.

[26] Defendants preface their motion to compel discovery into enhanced compensatory damages by implying that the court has already ruled on whether the plaintiff will be permitted to offer evidence in support of such a claim.  See Mot. to Compel (document no. 124) at 5-6.  It has not.  Rather, during the April 20, 2016 telephone conference -- and again at the final pretrial conference -- the court noted that the complaint arguably alleges facts supporting such a claim.  It further noted that defendants have not offered any authority squarely requiring plaintiff to include a request for such damages (by name or by articulating the applicable legal standard) in its prayer for relief before being allowed to present evidence on such a claim.  Thus, the court had gone no further than expressing its disinclination to preclude enhanced compensatory damages outright in a pretrial ruling.

During the final pretrial conference, counsel for Rockwood represented that Rockwood would withdraw any reliance on the tardily-produced documents if it would keep the trial on schedule.  In light of this representation, counsel for the defendants withdrew defendants' motion to compel additional discovery as to plaintiff's claim for costs and fees.

Moreover, while counsel for the defendants clearly and forcefully expressed their opinion that the purported lack of clear pleading on such damages was impermissible, they did not (and presumably could not) articulate what, if any, additional discovery they would conduct into plaintiff's claim for enhanced compensatory damages.  Whether plaintiff is entitled to such damages turns on the defendants' motive and the egregiousness of defendants' conduct.  Figlioli v. R.J. Moreau Companies, Inc., 151 N.H. 618, 621 (2005) ("When an act is wanton, malicious, or oppressive, the aggravating circumstances may be reflected in an award of enhanced compensatory damages.").  The parties here have fully explored the conduct itself, and the evidence thereof, in discovery in this action.  The defendants' motion to compel additional discovery on this issue is therefor denied.

The defendants requested a continuance of the trial to afford them time to conduct the requested discovery.  Because the court denies the defendants' motion to compel, for the

reasons discussed above, the court also denies defendants'
motion to continue the trial.

## IV.  Conclusion

For the foregoing reasons:

Defendants' motion to exclude the supplemental expert
report of Jonathan E. Hochman[27] is GRANTED.

Plaintiff's motion to exclude the expert opinion and
testimony of John R. Levine[28] is DENIED.

Defendants' first motion in limine[29] is GRANTED-IN-PART and
DENIED-IN-PART.  Their second, third, and fourth motions in
limine[30] and their motion in limine to preclude testimony from
certain Devine attorneys[31] are DENIED.

Plaintiff's first and second motions in limine[32] are
GRANTED-IN-PART and DENIED-IN-PART.

---

[27] Document no. 66.

[28] Document no. 67.

[29] Document no. 93.

[30] Document no. 93.

[31] Document no. 131.

[32] Document nos. 94 and 95.

Plaintiff's motion to hold Martha McAdam in contempt of court and/or to exclude her testimony[33] is DENIED without prejudice.

Defendants' motion to compel damages documentation, for sanctions, and to re-open discovery[34] and motion to continue the trial[35] are DENIED.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge


Dated:    May 6, 2016

cc:  Matthew B. Byrne, Esq.
     Norman Williams, Esq.
     Robert F. O'Neill, Esq.
     David A. Boyd, Esq.
     Petra A. Halsema, Esq.
     Finis E. Williams, III, Esq.
     James C. Wheat, Esq.
     Pierre A. Chabot, Esq.

---

[33] Document no. 96.

[34] Document no. 123.

[35] Document no. 124.